ILLINOIS CONTROLS, INC. ET AL., APPELLEES AND CROSS-APPELLANTS,
*v.* LANGHAM ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512.]

(No. 92–2212—Submitted January 4, 1994—Decided October 12, 1994.)

514

516

518

*Calfee, Halter & Griswold, John J. Eklund, William E. Coughlin* and *David J. Carney,* for appellees and cross-appellants.

*Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Leon M. Plevin, John J. McCarthy* and *Joel Levin,* for appellants and cross-appellees.

A. WILLIAM SWEENEY, J.

## I

The present action requires us to determine the obligations created by the pre-incorporation agreement ("PIA"), whether such obligations have been breached and, if so, what parties are liable therefor. Appellees contend that the reference in the PIA to the marketing capabilities of Clark Balderson and BI was merely prefatory and therefore created no marketing obligation. The court of appeals agreed.

We are unable to concur in this conclusion. A review of the PIA reveals that the only "prefatory" language appears in the "whereas clause," which set forth the parties' desire to manufacture and sell CSMs. Significantly, Article II of the agreement, which recites Balderson's marketing obligations, is introduced by the following phrase: "NOW, THEREFORE, *pursuant to the mutual covenants herein contained,* the parties hereto *agree as follows.*" (Emphasis added.) The agreement leaves little doubt that marketing of the CSM was one of the "covenants" to which the parties "agreed" in the introductory sentence.

Even if it were not expressly set forth in the PIA, appellees would still have the obligation to exert reasonable efforts to market the CSM. In *Wood v. Lucy, Lady Duff–Gordon* (1917), 222 N.Y. 88, 118 N.E. 214, the defendant, Lucy, Lady Duff–Gordon, was a self-described "creator of fashions." Creations bearing her name enjoyed a heightened level of market acceptance due to her association therewith. The plaintiff, Otis Wood, and the defendant agreed that he was to have the exclusive right, subject to her approval, to market products bearing her name. In exchange, defendant was to receive fifty percent of the profits derived from the enterprise. Rejecting defendant's claim that no binding contract existed because there was no mutuality of obligation, Judge Cardozo, writing for the court, concluded that plaintiff's implied promise to market defendant's fashions supplied the necessary consideration.

Appellees question *Wood*'s applicability, contending that mutuality of obligation is not an issue in the present case.

However, *Wood* is instructive in its description of the plaintiff's obligation and the strong resemblance that it bears to responsibilities assumed by the appellees in the case at bar. Judge Cardozo remarked:

"The implication [of a clause in the agreement] is that the plaintiff's business organization will be used for the purpose for which it is adapted. But the terms of the defendant's compensation are even more significant. Her sole compensation for the grant of an exclusive agency is to be one-half of all the profits resulting from the plaintiff's efforts. Unless he gave his efforts, she could never get anything. *Without an implied promise, the transaction cannot have such business 'efficacy as both parties must have intended that at all events it should have.'* * * * *His promise to pay the defendant one-half of the profits and revenues resulting from the exclusive agency and to render accounts monthly was a promise to use reasonable efforts to bring profits and revenues into existence. For this conclusion the authorities are ample.* * * *"* (Emphasis added.) 222 N.Y. at 91–92, 118 N.E. at 215.

In this case, as in *Wood,* the obligor gained the exclusive right to market the product in return for a percentage of the revenues. Moreover, as in *Wood,* the goal of the enterprise and appellant's receipt of royalties could be achieved only if appellees exerted reasonable efforts to market the product. The promise to perform such an undertaking is neither illusory nor indefinite. See 1 Restatement of the Law 2d, Contracts (1981) 197, Section 77, Comment *d,* Illustration 9.

Consequently, we hold that a contractual provision which gives a party the exclusive right to market a product on behalf of another imposes upon that party a duty to employ reasonable efforts to generate sales of the product.

The PIA makes this obligation clear. Evidence at trial further demonstrated that the parties intended to exploit Balderson's access to the heavy equipment market and, particularly, to CAT. Michael Langham testified that this was the *raison d'etre* for his collaboration with Balderson. This view was echoed by John Fruhwirth and Professor Nevin.

Appellees contend that this testimony constituted inadmissible parol evidence. However, the testimony is in accord with Balderson's marketing obligation set forth in the PIA. In Ohio, parol evidence directed to the nature of a contractual relationship is admissible where the contract is ambiguous and the evidence is consistent with the written agreement which forms the basis of the action between the parties. See *Watson v. Lamb* (1907), 75 Ohio St. 481, 79 N.E. 1075; *Hildebrand v. Fogle* (1851), 20 Ohio 147, 157.

The testimony at issue merely expounded upon appellees' marketing obligation to which the agreement refers. The testimony established the importance of Balderson's access to the CAT accessory market for a new product such as the CSM. Indeed, this was the basis of the agreement. Even assuming that the

PIA did not clearly describe appellees' marketing obligation, such evidence was admissible to explain the methods for attaining common objectives.[1] It is axiomatic that, where a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties. See *In re Estate of Fulk* (1940), 136 Ohio St. 233, 239, 16 O.O. 273, 276, 24 N.E.2d 1020, 1023; *Bowman v. Tax Comm.* (1939), 135 Ohio St. 295, 300, 14 O.O. 189, 191, 20 N.E.2d 916, 918; *Merchants Natl. Bank v. Cole* (1910), 83 Ohio St. 50, 59, 93 N.E. 465, 467.

From a review of the PIA and the evidence, it is apparent that appellees agreed to use their best efforts to market the CSM. We must, therefore, further determine whether the evidence supports the jury's determination that appellees had breached this duty. The parties were aware before the agreement was executed that certain marketing strategies must be followed for the product to succeed. Both parties acknowledged that approximately $225,000 over a two-year period was required to establish the product. Nevertheless, only $60,000 to $80,000 was actually committed.

Clark Balderson, prior to the PIA's execution, told appellant that he would invest $250,000 in Illinois Controls to assure an ample supply of CSMs for the CAT market. However, only $20,000 was committed to the manufacture of the device.

Appellees were aware of the importance of proper training of the sales force, proper installation, demonstrations and consignment sales and the exclusive relationship of Illinois Controls with CAT. Despite this awareness, no attempts were made to address these concerns. With respect to the final issue, Clark Balderson's actions transcended mere neglect of his marketing obligation. He sacrificed the exclusive relationship Illinois Controls was seeking to cultivate with CAT in order to sell CSMs to CAT competitors through Dymax.

Such evidence taken as a whole was more than ample for the jury to conclude that appellees breached their good faith obligation to make reasonable efforts to promote the sale of the CSM. Professor Nevin testified that an ineffective or half-hearted attempt to promote a product will impair or destroy its chances for success. The CSM was the only product sold by Illinois Controls. Clark Balderson placed the value of the company at $4 million when he sought to sell it. Thus, the failure to employ reasonable efforts to market the CSM destroyed its potential and doomed a company worth $4 million.

---

1. Such evidence has been expressly recognized as admissible to assist in the construction of pre-incorporation agreements. See *Mosier v. Parry* (1899), 60 Ohio St. 388, 402, 54 N.E. 364, 367; Henn & Alexander, Laws of Corporations and Other Business Enterprises (3 Ed. 1983) 248, Section 108.

## II

Appellees further challenge the award of damages in favor of appellants Michael and Patricia Langham and against appellee Illinois Controls in the amount of $752,000, and the allocation of $454,000 of this sum to Clark Balderson and $298,000 to BI. The liability of Illinois Controls under the contract arises from the relationship between Clark Balderson and BI as corporate promoters and Illinois Controls as the resulting corporate entity.

The legal relationship between a promoter and the corporate enterprise he seeks to advance is analogous to that between an agent and his principal. Thus, legal principles governing the relationship are derived from the law of agency. See Henn & Alexander, *supra,* at 253, Section 111; 1 Restatement of the Law 2d, Agency (1958) 216, Section 84, Comment *d;* 2 Restatement of the Law 2d, Agency (1958) 78, Section 326, Comment *b.*

Where an agent purports to act for a principal without the latter's knowledge, the principal may nevertheless be liable on obligations arising from the transaction if the principal later adopts or ratifies the agreement arising from the transaction or receives benefits from the agreement with knowledge of its terms. See 1 Restatement of the Law 2d, Agency (1958), Sections 82 and 98. This is true even where the principal lacked capacity at the time of the transaction giving rise to the obligation if, after obtaining such capacity, the principal manifests acceptance of the transaction. See *id.,* Sections 104 and 84, Comment *d.*

Likewise, a corporation, which is incapable of authorizing an agreement made on its behalf prior to its existence, may nevertheless adopt the agreement after its incorporation. Adoption may be manifested by the corporation's receipt of the contract's benefits with knowledge of its terms. See *City Bldg. Assn. No. 2 v. Zahner* (1881), 6 Ohio Dec.Rep. 1068; *Reif v. Williams Sportswear, Inc.* (1961), 9 N.Y.2d 387, 214 N.Y.S.2d 395, 174 N.E.2d 492; Henn & Alexander, *supra,* at 253–254, Section 11, fn. 6.

A corporation is therefore liable for the breach of an agreement executed on its behalf by its promoters where the corporation expressly adopts the agreement or benefits from it with knowledge of its terms.

The record discloses substantial evidence of the benefits conferred upon Illinois Controls by Michael Langham pursuant to the PIA. These benefits include the exclusive use of the CSM patent and the manufacturing capabilities of the Spring Valley facility previously operated by Langham Engineering, the titles to two motor vehicles, and appellant's engineering and technical expertise, which enabled the corporation to produce its sole stock in trade, the CSM. It is therefore beyond dispute that the corporation knowingly derived benefits from the agreement executed on its behalf.

There was also sufficient evidence that Illinois Controls breached the PIA, resulting in damages to appellants. In exchange for Langham Engineering's assets, Illinois Controls was to assume its debts and the debt assumed by Michael Langham to facilitate the creation of the corporation. However, despite the transfer of certain assets, Michael Langham's offer to transfer the remaining assets, and Illinois Controls' exclusive use of Langham Engineering resources, the corporation never assumed the debt as promised, leaving Michael Langham responsible for personal debt amounting to approximately $784,000 (i.e., $185,000 in pre-existing debt and $599,000 worth of additional obligations). In addition to the unassumed debt, appellant was owed a minimum of $10,850 in unpaid royalties (i.e., seventy units × $3,100 × five percent). This evidence more than supports the jury award of $752,000 in favor of Michael and Patricia Langham against Illinois Controls. Moreover, the jury award of $110,000 in favor of Joseph and Catherine Flaherty against Illinois Controls is clearly supported by evidence of the corporation's failure to assume the debt owed them as required in the PIA and the accrued interest on the debt from the date of the breach.

## III

Appellees Clark Balderson and BI additionally question the assessment of damages against them for breach of the agreement by Illinois Controls.

It is axiomatic that the promoters of a corporation are at least initially liable on any contracts they execute in furtherance of the corporate entity prior to its formation. See Henn & Alexander, supra, at 252, Section 111. The promoters are released from liability only where the contract provides that performance is to be the obligation of the corporation, Mosier v. Parry (1899), 60 Ohio St. 388, 404, 54 N.E. 364, 367; 1 Seaver, Ohio Corporation Law (1989) 25, Section 9(d)(i); the corporation is ultimately formed, Henn & Alexander, supra, at 252, Section 111, fn. 1 and 2; and the corporation then formally adopts the contract, 1 Seaver, supra, at 26, Section 9(d)(ii).

It is generally recognized that where a pre-incorporation agreement merely indicates that it is undertaken on behalf of a corporation, the corporation will not be exclusively liable in the event of a breach. Under such circumstances the promoters of the corporation remain liable on the contract. See RKO–Stanley Warner Theatres, Inc. v. Graziano (1976), 467 Pa. 220, 355 A.2d 830; 1A Fletcher, Cyclopedia of the Law of Private Corporations (1993) 465, Section 215.

Formation of the corporation following execution of the contract is a prerequisite to any release of the promoters from liability arising from the pre-incorporation agreement. Inasmuch as the promoter-corporation relationship is based on agency principles, a promoter will not be released from liability if the corporation is never formed, because one may not be an agent for a nonexistent

principal. See 1A Fletcher, *supra*, at 465, Section 215; 2 Restatement of the Law 2d, Agency (1958), Section 326; Henn & Alexander, *supra*, at 252, Section 111.

Moreover, mere adoption of the contract by the corporation will not relieve promoters from liability in the absence of a subsequent novation. See Ballantine, Manual of Corporation Law & Practice (1930) 163, Section 47a; 1A Fletcher, *supra*, at 329, Section 190; Henn & Alexander, *supra*, at 255, Section 111. This view is founded upon "the well-settled principle of the law of contracts that a party to a contract cannot relieve himself from its obligations by the substitution of another person, without the consent of [the] other party." Ballantine, *supra*, at 163. See, also, *Chapin v. Longworth* (1877), 31 Ohio St. 421. Consequently, the promoters of a corporation who execute a contract on its behalf are personally liable for the breach thereof irrespective of the later adoption of the contract by the corporation unless the contract provides that performance thereunder is solely the responsibility of the corporation.

Applying these principles to the facts of the present case, we find that the promoters remain personally liable on the pre-incorporation agreement. While the corporation was subsequently formed as envisioned in the contract, the agreement does not state that the parties intended that the corporate entity was to be exclusively liable for any breach. Even if the agreement did so provide, there is no evidence that the corporation, once formed, formally adopted it.

Under the circumstances presented herein, both the promoters and the corporation are liable under the contract. See 1A Fletcher, *supra*, at 329, Section 190. The corporation is liable because it accepted benefits conferred by the PIA with knowledge of its terms. The promoters are liable because the corporation never formally adopted the PIA, and the PIA does not make the corporation solely responsible for the obligations arising thereunder.

## IV

Inasmuch as both the promoters of Illinois Controls and the corporation itself are liable, the nature of this shared liability remains to be determined. While our research has failed to discover an Ohio decision which has addressed this specific issue, resort to agency principles is, again, instructive. The relationship between a promoter and a corporation to be formed can be compared to the relationship between an agent and an undisclosed principal. Where a contract is made in furtherance of the interests of an undisclosed principal, both the principal and the agent are liable for breach of its underlying obligations. See *Hutchinson v. Wheeler* (1862), 85 Mass. (3 Allen) 577; *North Carolina Lumber Co. v. Spear Motor Co.* (1926), 192 N.C. 377, 382, 135 S.E. 115, 117–118; *Lincoln Joint Stock Land Bank v. Bexten* (1933), 125 Neb. 310, 321, 250 N.W. 84, 88. Under such circumstances, the agent and the undisclosed principal are jointly and severally

liable for breach of the agreement. See *Crown Controls, Inc. v. Smiley* (1988), 110 Wash.2d 695, 704, 756 P.2d 717, 721; *Engelstad v. Cargill, Inc.* (Minn.1983), 336 N.W.2d 284, 286; *Grinder v. Bryans Rd. Bldg. & Supply Co., Inc.* (1981), 290 Md. 687, 706–707, 432 A.2d 453, 463–464; *Traylor v. Grafton* (1975), 273 Md. 649, 676, 332 A.2d 651, 668 (applying Pennsylvania law); *Joseph Melnick Bldg. & Loan Assn. v. Melnick* (1949), 361 Pa. 328, 335, 64 A.2d 773, 777; *Williamson v. O'Dwyer & Ahern Co.* (1917), 127 Ark. 530, 192 S.W. 899; *Lull v. Anamosa Natl. Bank* (1900), 110 Iowa 537, 542, 81 N.W. 784, 786; *Cobb v. Knapp* (1877), 71 N.Y. 348, 353; *Beymer v. Bonsall* (1875), 79 Pa. 298; 2 Restatement of the Law 2d, Judgments (1982) 37, Section 49, Comment *c;* Ferson, Undisclosed Principals (1953), 22 U.Cin.L.Rev. 131, 142–144. See, also, *Maple v. Cincinnati, Hamilton & Dayton RR. Co.* (1883), 40 Ohio St. 313, 316–318 (joint and several liability between agent and disclosed principal for fraud committed by agent without knowledge of principal). To the extent that *Campbell v. Murdock* (S.D.Ohio 1950), 90 F.Supp. 297, is at variance with the foregoing authorities, it is disapproved.

These holdings are consistent with the shared liability for a contractual obligation undertaken by a promoter on behalf of a yet-to-be-formed corporation. See *State v. Indus. Tool & Die Works, Inc.* (1945), 220 Minn. 591, 601–602, 21 N.W.2d 31, 37, fn. 2; *Universal Industries Corp. v. Lindstrom* (1983), 92 A.D.2d 150, 152, 459 N.Y.S.2d 492, 494; *Ratner v. Cent. Natl. Bank of Miami* (Fla.App. 1982), 414 So.2d 210, 212; *Malisewski v. Singer* (App.1979), 123 Ariz. 195, 197, 598 P.2d 1014, 1016; 1A Fletcher, *supra,* at 329 and 465, Sections 190 and 215; Ballantine, *supra,* at 163, Section 47a.

We therefore conclude that where a corporation, with knowledge of the agreement's terms, benefits from a pre-incorporation agreement executed on its behalf by its promoters, the corporation and the promoters are jointly and severally liable for breach of the agreement unless the agreement provides that performance is solely the responsibility of the corporation or, subsequent to the formation of the corporate entity, a novation is executed whereby the corporation is substituted for the promoters as a party to the original agreement.

It is therefore unnecessary to consider the argument of appellees that there was insufficient evidence to support the conclusion that Clark Balderson and BI were the alter ego of Illinois Controls so as to permit the corporate veil of the latter entity to be pierced. Rather, Illinois Controls and the promoters thereof (Clark Balderson and BI) are jointly and severally liable to appellants for breach of the PIA.

## V

Appellees further maintain that the judgment against them is precluded because appellants did not assert the promoter theory in their complaint. Civ.R.

8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties. "The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief." McCormac, Ohio Civil Rules Practice (2 Ed.1992) 102, Section 5.01. See, also, *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 82, 8 OBR 111, 115, 455 N.E.2d 1344, 1347–1348; 4 Anderson's Ohio Civil Practice (1987) 272–273, Section 151.03.

Accordingly, it was sufficient that appellants set forth facts which, if proven, established their claim for relief. It was not incumbent upon them to plead the law which created the liability of each defendant for breach of contract or which rendered them jointly and severally liable under the PIA. See *Scandinavian–American Bank v. Wentworth Lumber Co.* (1921), 101 Ore. 151, 157, 199 P. 624, 626; 1A Fletcher, *supra*, at 459–460, Section 213.

## VI

Appellants also challenge the trial court's order excluding evidence of lost profits. Appellants proffered Professor Nevin's testimony to establish that lost profits resulting from appellees' breach could be proved with reasonable certainty. The trial court concluded that the evidence was too speculative. Such a determination will not be reversed on appeal absent an abuse of discretion. See *AGF, Inc. v. Great Lakes Heat Treating Co.* (1990), 51 Ohio St.3d 177, 182, 555 N.E.2d 634, 639; *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290, 292. From our review of the proffered evidence, we discern no abuse of discretion on the part of the trial court in granting the motion *in limine*.

The judgment of the court of appeals is therefore affirmed in part and reversed in part, and the cause is remanded to the trial court for reinstatement of judgment.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment only.