Appellees Clifford and Kathleen Crosser are principal stockholders in Crosser Funeral Home, Inc. of Port Clinton, Ohio. In July 1985, the corporation purchased another Port Clinton funeral home. Included in the purchase were commercial buildings at 120 and 122 N. Adams Street, Port Clinton. The Crossers took these properties for themselves as joint tenants with survivorship rights.
In 1994, Clifford Crosser listed 120 and 122 N. Adams for sale with realtor Richard Chapman. Chapman showed the properties to appellant, Terry Cornell. Appellant was interested, but disinclined to purchase both properties at that time. Appellant, nevertheless, made an offer to purchase 120 N. Adams; the offer also contained a "Right of 1st Refusal" on 122 N. Adams. Clifford Crosser counter-offered at a higher price, but retained appellant's "Right of 1st Refusal on * * * 122 N. Adams, Port Clinton (3 Business Days for Decision)." Appellant accepted the counter-offer and Clifford and Kathleen Crosser conveyed 120 N. Adams to a business entity owned by appellant."[1]
When Richard Chapman's exclusive listing agreement expired, Clifford Crosser listed 122 N. Adams with appellee Archie Stinson, a real estate agent with appellee real estate broker Nancy J. Dunlap. In February 1997, the Dunlap Agency obtained a $132,000 offer on 122 N. Adams by appellee D. Bowen Loeffler and his law partner Louis Wargo. This offer was sent to Clifford Crosser who accepted it on February 5, 1997.
On the same day, Nancy Dunlap faxed appellant notice of the pending sale requesting that appellant "please advise us or Mr. Crosser in writing of your intention regarding same by Monday, February 10, 1997 at 5:00 P.M."
According to appellant, his response to the fax was a telephone call to Dunlap in which he told her he was interested in exercising his option, but wanted to see the offer itself before committing. Dunlap told appellant that the offer contained a confidentiality clause which prohibited its disclosure. Following this, appellant drafted two letters to Nancy Dunlap: one dated February 6, 1997, advising her that he was exercising his right of first refusal, "* * * pending verification," and a second, dated February 7, 1997, stating that, L"[o]ur thinking right now is that we will probably buy the place * * *," but must see the purchase offer.
In her deposition testimony, Nancy Dunlap reported receiving only the February 7, 1997 letter. She asserts that this letter was not received by her until February 12, 1997, and she supports her testimony with an envelope addressed to her by appellant and postmarked February 11, 1997.
Apparently believing that appellant had failed to effectively exercise his right of refusal, the Crossers acted to convey the property to Loeffler and Wargo. However, before the transaction could be completed, appellant recorded an affidavit of facts setting out his purported interest in the property. This cloud on the title, in effect, blocked the sale.
On June 11, 1997, Loeffler and Wargo sued the Crossers, seeking specific performance of the realty purchase agreement and damages. The Crossers did not contest Loeffler and Wargo's right to the remedies sought, but filed a cross-complaint against appellant. The Crossers maintained that appellant, in recording his affidavit of facts, acted fraudulently and in bad faith. Appellant then counterclaimed against the Crossers seeking specific performance on the exercise of his option under his right of first refusal. He also sued Nancy Dunlap, Archie Stinson, Dunlap's realty company, and Loeffler and Wargo alleging conspiracy and tortious inference with his contractual rights arising from the purchase agreement.
Following discovery, appellees Loeffler and Wargo moved for summary judgment against the Crossers and for a dismissal of appellant's complaint. Appellees Crosser, Dunlap, Dunlap's Company and Stinson moved for summary judgment. Appellant opposed all these motions.
The trial court granted appellees' motions, citing three alternative reasons. First, the court concluded that the right of first refusal was void ab initio for want of acceptance by Kathleen Crosser as joint owner of the property; second, the right of first refusal was void as violative of Ohio's rule against perpetuities; and, third, appellant's exercise of the option was untimely.
From this judgment, appellant now brings this appeal, setting forth the following three assignments of error.
 "1. The trial court erred when it held as a matter of law that when construing the evidence most strongly in favor of Terry Cornell, the right of first refusal granted to Terry Cornell by Clifford Crosser was invalid, in total, since it was not signed by Kathleen Crosser, a joint tenant of the real estate owned by Clifford Crosser.
 "2. The trial court erred when it held in the alternative and as a matter of law that when construing the evidence most strongly in favor of Terry Cornell, the right of first refusal granted by Clifford Crosser to Terry Cornell violated the provisions of O.R.C. 2131.08(A) known as the Rule Against Perpetuities.
 "3. The trial court erred when it held in the alternative and as a matter of law that when construing the evidence most strongly in favor of Terry Cornell, he failed to exercise the right of first refusal granted to him by Clifford Crosser."
On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Nat'l. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 67, Civ.R. 56(E).
When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984), 11 Ohio St.3d 75,79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Needham v.Provident Bank (1996), 110 Ohio App.3d 817, 826, citing Andersonv. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248.
The trial court awarded appellees summary judgment for three alternative reasons. If any of these reasons are correct, its decision must be sustained.
 "[A] `right of first refusal', is a promise to present offers to buy property made by third parties to the promisee in order to afford the promisee the opportunity to match the offer." Latina v. Woodpath Dev. Co.
(1991), 57 Ohio St.3d 212.
The right of first refusal is in the nature of an option, differing only in that in an option contract, the owner grants another person the privilege, without the obligation, to purchase real property at a set price, within a set time. The holder of a right of first refusal has a privilege, without the obligation, to purchase real property at a price determined by an offer by a third party within an agreed upon period of time following notice of such third party's offer. Curry Durham, Ohio Real Property Law and Practice (5 Ed. 1996) 4, § 1-1(e), Option Contracts. While the right is preemptive, that is a right to buy before or ahead of others, it is also distinguishable from an ordinary option in that the holder of the right may not force an unwilling seller to sell. Stratman v. Sheetz (1989), 60 Ohio App.3d 71,73; Annotation (1971), 40 A.L.R.3d 920, 924.
 I.
In his first assignment of error, appellant complains that the trial court erred in declaring the purchase option invalid for want of Kathleen Crosser's signature. Appellant argues that, construing the evidence most strongly in his favor, there is at least a question of fact as to whether Clifford Crosser was acting as Kathleen's agent when he entered into the purchase agreement at issue. Alternatively, appellant argues that Kathleen Crosser ratified the purchase agreement when she signed the deed of conveyance for 120 N. Adams.
Concerning the ratification issue, one may be held liable in a transaction initiated by another, even without the principal's knowledge, if the principal later adopts or ratifies the transaction or receives benefits from the agreement with knowledge of its terms. Illinois Controls, Inc. v. Langham
(1994), 70 Ohio St.3d 512, 522, citing 1 Restatement of the Law 2d, Agency (1958), Sections 82 and 98. Ordinarily, in a single transaction a purported principal must affirm the transaction as a whole: he or she may not accept the benefits and deny the burdens. 1 Restatement, supra, 297, Section 96. However, if related transactions are severable, one can ratify one part, but not another. Id. at 248-249, Comment (b) to Section 96. The effect is analogous to the concept of merger of a purchase contract into the deed wherein the delivery of a deed extinguishes obligations contained in the purchase agreement, but only so far as the contract excludes them. Brint v. Doyon (Lucas App. 1929), 7 Ohio Law Abs. 427; see, also, 2 McDermott's Ohio Real Property (1990), 317, Section 28-11(B).
The purchase agreement under review addresses two transactions dependent upon each other only to the extent that it may be inferred that the purchase of the one parcel provides consideration for the right for first refusal on the other parcel. Therefore, the agreement for the sale of 120 N. Adams is severable from the purchase option contract for 122 N. Adams. As a result, Kathleen Crosser's signature on the deed for 120 N. Adams, without more, does not serve to ratify the purchase agreement's right of first refusal option on 122 N. Adams. Since the record reflects nothing more by which it could be concluded that Kathleen Crosser intended to ratify the option contract, her execution of the deed for 120 N. Adams only ratifies that portion of the agreement relating to that transaction.
Regarding appellant's assertion of agency between the Crossers, it has long been held that a contract for sale of property entered into by one joint owner, which on its face is a contract only of the individual who negotiates the sale, will not be construed as a contract on his or her part as an agent for others, even if the vendor represents to the buyer that he has the authority to sell the interests of the other joint tenants.Rudabaugh v. Hart (1899), 61 Ohio St. 73, paragraph one of the syllabus. Such is the case here, where the purchase agreement is only signed by Clifford Crosser. As a result, there is no agency relationship which might bind Kathleen Crosser to the purchase option contract.
Therefore, our view of the record corresponds with that of the trial court's. Appellant has failed to come forth with evidence sufficient to create a question of fact as to either agency or ratification. Accordingly, appellant's first assignment of error is not well-taken.
 II.
In his second assignment of error, appellant complains that the trial court erred in applying the rule against perpetuities to void his right of first refusal.
The rule against perpetuities is a device to prevent restraints on the alienability of property. See 61 American Jurisprudence 2d (1981) 1, et seq., Perpetuities and Restraints on Alienation. The common law rule, in a draconian fashion, served to void any conveyance of property that created a future estate which might possibly not become vested within a life or lives in being at the time of its creation plus twenty-one years thereafter. Id. at 12, § 6. The rule has been applied to options and preemptive rights including a right of first refusal. Id. at 128-129; Annotation (1971), 40 A.L.R.3d 920, Preemptive Rights to Realty as a Violation of Rule Against Perpetuities.
Ohio, however, has a statutory rule against perpetuities, R.C. 2131.08, which provides that any document which on its face violates the rule, "* * * shall be reformed [so that] the period of perpetuities shall be measured by actual rather than possible events." R.C. 2131.08(C). See, also, Stratman v.Sheetz, supra, 60 Ohio App.3d 71, 73, at fn. 1.
Here, appellant moved to exercise his preemptive right of first refusal within the life of one in being at the time of its creation, his own. Accordingly, the actual event does not violate the rule. Therefore, the trial court erred in concluding that the right of first refusal option violated the perpetuities rule. Appellant's second assignment of error is well-taken.
 III.
In his final assignment of error, appellant complains that the trial court erred in concluding that if appellant did have a valid right of first refusal, he failed to timely exercise it. There is much dispute concerning the events appellant purports constitute an exercise of his option. The question, however, is whether this factual dispute is material.
It is uncontroverted that the right of first refusal clause in the sales contract was authored by appellant. Therefore, any ambiguities resulting from the language employed should not be construed to his benefit, Central Realty Co. v. Clutter (1980),62 Ohio St.2d 411, 413, and ambiguities abound. The provision in its entirety reads "[appellant] to have Right of 1st Refusal on Funeral Home Bldg Adjacent at 122 N. Adams Port Clinton (3 Business Days for Decision)." Since "right of 1st refusal" is a term of art, see Latina v. Woodpath Dev. Co., supra, we know its meaning. We know the property to which the right is to attach and we can reasonably infer from the parenthetic phrase that the holder of the right has three business days to decide whether to exercise his right to match a third party offer. We can also reasonably infer that this period also encompasses the period within which the holder of the right has to notify the seller of his intention to exercise the right. Similarly, it is reasonable to expect that notice of the offer and notice of the exercise of the offer be in writing. The provision does not, as appellant insists, require the seller to provide him with a copy of the offer or to prove it is bona fide.[2]
Using this contractual framework, we analyze this transaction as follows. On Wednesday, February 5, 1997, appellant received from realtor Dunlap a fax notifying him that an offer to purchase had been made on the property over which he held the right of first refusal. This communication disclosed the offered price and requested that appellant notify Dunlap of his intentions, in writing, within five days (by close of business, Monday, February 10, 1997). Appellant called Dunlap that afternoon, engaging in a conversation during which appellant insists he informed her of his intention to exercise his option. Dunlap denies appellant said this. At some point during the next few days, appellant wrote two letters to Nancy Dunlap: one dated February 6, 1997, requesting that Dunlap, "* * * advise Mr. Crosser that I am exercising my Right of First Refusal * * * pending verification of the offer." Nancy Dunlap testified that she never received this letter. Appellant then wrote a second letter, dated February 7, 1997, in which prior to exercising the right he inserted that he, "* * * must have verifying proof that you do have a valid offer to purchase," however, "our thinking right now is that we will probably buy the place." Nancy Dunlap testified that she did not receive this letter until February 12, 1997, and submitted what she said was the envelope in which the letter came. The envelope is postmarked February 11, 1997. Asked about these letters in his deposition, appellant said he was not certain if or when his office staff had mailed the letters.
Appellant's assertion of an oral exercise of the right and Dunlap's contradiction of the assertion is not material here. The notification fax specifically requested written notice of option exercise. This is a reasonable request considering that the subject of the right is real property.
As for the letters which purport to exercise the option, Nancy Dunlap's deposition testimony is unrefuted. She insists that she never received the February 6 letter and did not receive the February 7 letter until February 12. Appellant did not contradict this testimony, but stated only that he was not certain when his office staff mailed these letters.[3]
Pursuant to Civ.R. 56(E), when Nancy Dunlap testified she did not receive the letter until February 12, appellant was obligated to come forth with some evidence to contradict this testimony for there to be a material question of fact. He did not. Therefore, even construing the evidence in appellant's favor, there is no question of material fact. The unrefuted fact is that appellant did not in writing notify Dunlap or anyone else of his exercise of the right within the three days in which he was contractually obligated to do so or within the five days contained in the terms of the notice. Consequently, appellees were entitled to judgment as a matter of law. Appellant's third assignment of error is not well taken.
On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________ Melvin L. Resnick, J.
JUDGE
 ____________________________ James R. Sherck, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.
[1] Part of the deal was also a lease-back arrangement whereby the Crossers rented a part of 120 N. Adams. A damage complaint by appellant against Crosser is unresolved. This matter is before the court pursuant to Civ.R. 54(B).
[2] Appellant contends that because he had been provided with prior offers, this constituted a course of conduct. However, there is no contractual requirement for this and it was made clear to him that this offer had a confidentiality clause.
[3] We need not discuss whether one or the other of these letters contained a clear and unambiguous exercise of the option.