DECISION
James M. Uhlenbrock ("Dr. Uhlenbrock") and Elizabeth A. Uhlenbrock, plaintiffs-appellants, (collectively referred to as "the Uhlenbrocks") appeal a judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of KeyBank, defendant-appellee.
On November 3, 1996, the Uhlenbrocks entered into a construction contract with New Albany Group ("NAG"), a general contractor, for the construction of a home in New Albany, Ohio, for the contract price of $323,000. NAG maintained a checking account with KeyBank. The Uhlenbrocks made a down payment of $10,000 and financed the remaining portion through a construction loan with National City Bank ("NCB").
Pursuant to the construction contract, NAG was to be paid in draws following the completion of specific phases of the construction. At issue in the current case is the payment of two construction draws to NAG. On February 6, 1997, TransOhio Lawyers Title ("the title company") issued a check for $31,300 for a draw ("check #1"), made payable to "The New Albany Group and James Michael Uhlenbrock." On April 2, 1997, the title company issued a check for $32,082.50 for a third draw ("check #3"), made payable to "James Uhlenbrock and The New Albany Group." Both checks were presented for payment to KeyBank as the depositary bank, deposited in the account maintained by NAG, and were not endorsed by Dr. Uhlenbrock. Dr. Uhlenbrock alleges that he was not aware his name was on the two checks as a payee.
Due to problems the Uhlenbrocks encountered with NAG (the suspect billing of certain items and its request for a suspicious draw on July 8, 1997), the Uhlenbrocks hired another builder to complete the construction of the home on August 11, 1997. The total cost to complete the home under the new contractor was $552,254.37, which was $222,943.37 over the original contract price with NAG. On December 9, 1997, NAG filed for protection from its creditors under the United States Bankruptcy Code. The Uhlenbrocks received no monies from the bankruptcy proceedings.
On March 31, 1999, the Uhlenbrocks filed a complaint against KeyBank, alleging that KeyBank had paid checks #1 and #3 in contravention of the Uniform Commercial Code because Dr. Uhlenbrock did not endorse either check as payee. On December 29, 1999, KeyBank filed a motion for summary judgment. KeyBank argued that it was entitled to summary judgment on the grounds that the Uhlenbrocks could not establish a genuine issue of material fact as to all of the elements of their claim for conversion brought against KeyBank because: (1) the Uhlenbrocks ratified the payment of the checks in question, and (2) the Uhlenbrocks suffered no damages. On January 31, 2000, the Uhlenbrocks filed their memorandum contra KeyBank's motion for summary judgment.
On May 18, 2000, the trial court granted KeyBank's motion for summary judgment. Although the trial court found that endorsements from both parties were required to negotiate the two checks, it found that the Uhlenbrock's could not succeed in their claim for conversion because: (1) the Uhlenbrocks were not entitled to receive the proceeds of the check at the time of the conversion, and (2) Dr. Uhlenbrock had given written authorization for the checks to be drawn and knew the bank upon which the checks were drawn, had been presented, and honored. The trial court found that even if the Uhlenbrock's had a right to the proceeds of the checks at the time of the conversion and had not ratified the bank honoring the checks, their complaint for conversion would still fail because they sustained no damages by KeyBank's actions. The trial court's decision was journalized May 31, 2000. The Uhlenbrocks appeal the judgment of the trial court, asserting the following assignment of error:
 ASSIGNMENT OF ERROR: The trial court erred in granting defendant-appellee's Motion for Summary Judgment in that genuine issues of material fact exist in this case and defendant-appellee is not entitled to judgment as a matter of law.
The Uhlenbrocks assert in their sole assignment of error that the trial court erred in granting KeyBank's motion for summary judgment. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the non-moving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists.Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
The Uhlenbrocks' claim against KeyBank is for conversion. Thus, the Uhlenbrocks' claim must fail if KeyBank demonstrates either: (1) there is no genuine issue of material fact with regard to any of its claimed defenses to conversion, or (2) there is an absence of a genuine issue of material fact with respect to any element of conversion. R.C. 1303.60(A) provides, in pertinent part, that an instrument is converted if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or to receive payment. Further, R.C.1303.08(D) provides that where an instrument is payable to two or more persons, not alternatively, it may only be negotiated, discharged, or enforced by all of them. There is no dispute that the checks in the present case were made payable to both NAG "and" Dr. Uhlenbrock as joint payees; thus, they could have been negotiated only by obtaining the endorsements of both parties. Therefore, pursuant to R.C. 1303.60(A) and 1303.08(D), KeyBank, as the depositary bank, was liable to Dr. Uhlenbrock as the non-endorsing payee, for conversion of the checks because Dr. Uhlenbrock did not endorse the checks.
However, KeyBank may invoke common-law defenses to a claim for conversion. See R.C. 1301.03. The defenses available to conversion include: (1) ratification by the non-signing payee of payment to the signing payee, and (2) lack of a proprietary interest in the proceeds of the converted checks. Boos v. Mid-American National Bank (1993), Lucas App. No. L-92-275, unreported, citing Annotation, Bank's Liability to Nonsigning Payees for Payment of Check Drawn to Joint Payees Without Obtaining Indorsement of Both (1973), 47 A.L.R.3d 537, 550.
Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account whereby the act, as to some or all persons, is given effect as if it was originally authorized by him. Restatement of the Law 2d, Agency (1958), Section 82, Comment b; Illinois Controls, Inc. v. Langham (1994),70 Ohio St.3d 512, 522. A ratification has the same effect as authorization; upon ratification, the consequences of the original transaction are the same as if it had been authorized. Id. Affirmances can be established "by any conduct of the purported principal manifesting that he consents to be a party to the transaction." Restatement of the Law 2d, Agency (1958), Section 93(1). Thus, Dr. Uhlenbrock ratified KeyBank's improper conversion if he had full knowledge of the facts and conducted himself in a way which manifested his intention to approve KeyBank's actions in depositing the checks. See Bailey v. MidwesternEnt., Inc. (1995), 103 Ohio App.3d 181; see, also, Illinois Controls,supra; Testa v. Roberts (1988), 44 Ohio App.3d 161, 165.
After reviewing the materials submitted by both parties and the record before us, we find that the Uhlenbrocks ratified KeyBank's actions for several reasons. First, as the trial court found, the Uhlenbrocks signed two forms entitled Request for Disbursement and Receipt and Affidavit ("Disbursement and Receipt forms"), in which they acknowledged and directed the proceeds of checks #1 and #3 to be paid to NAG. According to the Disbursement and Receipt forms, the checks were payments for construction costs, including the payment of all suppliers, subcontractors, and laborers. Thus, the Uhlenbrocks intentionally released the disputed monies to NAG for the costs of construction pursuant to the Disbursement and Receipt form. The Uhlenbrocks present little in compelling arguments in opposition to this issue except to contend that "[t]he contractor needed money" and that "[c]ompleting these forms was a step in the process." However, it is immaterial whether the Uhlenbrocks saw the execution of these forms as merely a "step in the process" without any further relevancy. For the purposes of KeyBank's defense of ratification, what is significant is that the Uhlenbrocks specifically authorized payments to be made to NAG. KeyBank's actions carried out the Uhlenbrocks' intentions as delineated in the Disbursement and Receipt forms.
Second, as the trial court found, the Uhlenbrocks' execution of the Disbursement and Receipt forms evidences their ratification in an additional manner. After the proceeds of check #1 were distributed to NAG, the Uhlenbrocks executed two more Disbursement and Receipt forms that specifically stated: "[t]he Borrower(s) and General Contractor hereby acknowledge receipt of all sums previously disbursed by Lender." Such admissions twice acknowledged and consented to KeyBank's treatment of check #1. Likewise, the Uhlenbrocks signed another Disbursement and Receipt form after the proceeds of check #3 were distributed, in which they again acknowledged receipt of all previous proceeds paid.
The Uhlenbrocks argue that "the document states that the borrower received the proceeds; it does not indicate he ratified the bank's deposit of the checks without his signature." However, the question before us is not whether the document specifically indicates that the Uhlenbrocks acquiesced to the deposit of the checks by KeyBank without Dr. Uhlenbrock's signature. Rather, what is significant for the present analysis is whether the act of signing the Disbursement and Receipt forms, after the deposit of the checks by KeyBank, manifested an intent
to ratify KeyBank's actions. The signing of the forms by the Uhlenbrocks, stating that they had received the proceeds from the previous checks, may only be construed to evince that they had no objection to the deposit of the funds into NAG's account. Thus, the Uhlenbrocks' execution of the subsequent Disbursement and Receipt forms constituted ratification of each of the deposits.
Third, the Uhlenbrocks intent to ratify the deposits made by KeyBank was manifested by their failure to raise the issue of the unauthorized payments with KeyBank while continuing to conduct business with NAG as if the checks were properly deposited by KeyBank. It is well-established that a principal ratifies the unauthorized acts of his agent when he does not take all steps reasonably within his power to disaffirm promptly and effectively the unauthorized acts of his agent. Ward v. Natl. Bank ofPaulding (1965), 5 Ohio Misc. 140, paragraph three of the syllabus.
In the present case, it is undisputed that the Uhlenbrocks failed to promptly disaffirm the actions of KeyBank. Dr. Uhlenbrock testified in his deposition that he had knowledge in March 1997 that KeyBank had deposited check #1 in NAG's account. Because the Uhlenbrocks had executed the Disbursement and Receipt form for that check, they were fully aware that the check should not have been deposited without their endorsement. Despite their knowledge of the improper actions of KeyBank, Dr. Uhlenbrock testified that he never raised the issue of the improperly endorsed checks with KeyBank. Dr. Uhlenbrock stated that he did not take any steps against KeyBank with regard to these monies because he assumed everything was "going along smoothly" and that the subcontractors and suppliers were being paid properly. Dr. Uhlenbrock also testified that they only filed the suit against KeyBank after NAG filed for bankruptcy and they realized "that was our only hope of trying to come out of this. We went from a $400,000 house — $425,000 house that ended up costing us about $470,000."
It is apparent from Dr. Uhlenbrock's statements that the gravamen of the Uhlenbrocks' complaint is not with regard to KeyBank's handling of the checks but, rather, with NAG's handling of the checks. We are sympathetic. However, the Uhlenbrocks could not explicitly sanction KeyBank's actions and continue to benefit from such actions with knowledge that they were improper and then attempt to repudiate them much later when the proceeds of the checks were not expended appropriately by NAG. The Uhlenbrocks are not permitted to have it both ways. See Bernardov. Anello (1988), 61 Ohio App.3d 453, 459 (an unauthorized act by an agent may, by implication, be ratified through the acceptance of the benefits and fruits of such act). The Uhlenbrocks' action, and inaction, clearly demonstrates that they had no objection to KeyBank's treatment of the checks and that they deemed it satisfactory for KeyBank to deposit the checks in NAG's account.
Moreover, as KeyBank points out, the Uhlenbrocks continued to conduct business as usual with NAG until August 1997. Dr. Uhlenbrock testified that he thought construction was proceeding as planned and he continued to communicate with and disburse money to NAG despite KeyBank's deposit of the checks into NAG's account. Again, the Uhlenbrocks were not permitted to receive the benefits of KeyBank's actions while sitting on their rights and then untimely assert claims against KeyBank once NAG was found to have improperly utilized the monies. Therefore, even construing the evidence most strongly in favor of the Uhlenbrocks, reasonable minds can only come to the conclusion that the Uhlenbrocks manifested their intention to ratify the actions of KeyBank.
In addition to manifesting the intention to ratify, the principal must also have full knowledge and understanding of the acts performed by the agent. Bernardo, supra, at 459. Thus, it must also be demonstrated that the Uhlenbrocks had knowledge of the deposit of checks #1 and #3 by KeyBank. As we have briefly discussed above, it is clear that the Uhlenbrocks had full knowledge that the checks had been endorsed by NAG only and that KeyBank had deposited them into NAG's account. Dr. Uhlenbrock averred in his affidavit that he knew checks #1 and #3 had been deposited by KeyBank and the proceeds paid to NAG because his loan payments increased. Dr. Uhlenbrock stated in both his affidavit and during his deposition that he understood that his construction loan payments were going up in accordance with the amount being disbursed to NAG. As stated previously, Dr. Uhlenbrock also testified in his deposition that he assumed NAG had cashed the checks and paid the subcontractor and suppliers and that everything was going smoothly. Even assuming,arguendo, that Dr. Uhlenbrock did not have specific knowledge at the time that his name was also on the checks as a payee, such would have been contrary to the Disbursement and Receipt forms he had executed, thereby giving immediate cause to investigate. Regardless, the Uhlenbrocks knew NAG was receiving the monies precisely as they had requested and intended.
Therefore, we find that the Uhlenbrocks had knowledge that NAG was depositing the checks with only its endorsement contrary to the directions on the Disbursement and Receipt forms and that KeyBank was accepting such deposits. Construing the evidence most strongly in favor of the Uhlenbrocks, reasonable minds can come only to the conclusion that the Uhlenbrocks ratified KeyBank's conversion with knowledge of the facts and conducted themselves in a way that manifested their intention to ratify KeyBank's actions in depositing the checks. The Uhlenbrocks' assignment of error is overruled. Because of our disposition on the issue of ratification, the Uhlenbrocks' arguments with regard to their right to the proceeds of the checks and whether they suffered damages are moot.
Accordingly, we find that the trial court did not err in granting KeyBank's motion for summary judgment. The Uhlenbrocks' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, P.J., and BOWMAN, J., concur.