[Cite as *Windham v. 450 Invests., Inc.*, 2011-Ohio-1034.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| DEAN WINDHAM, ET AL | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2010-CA-00215 |
| 450 INVESTMENTS, INC. | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil appeal from the Canton Municipal
                            Court, Case No. 2009CVF6338




JUDGMENT:                   Affirmed




DATE OF JUDGMENT ENTRY:     March 7, 2011

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

RONALD K. STARKEY                   RONALD T. GATTS
10689 Cleveland Avenue N.W., Ste B  159 S. Main Street, Ste. 812
Uniontown, OH  44685                Akron, OH  44308

*Gwin, P.J.*

{¶1}    Defendant-appellant 450 Investments, Inc. appeals a judgment of the Municipal Court of Canton, Ohio, which awarded plaintiffs-appellees Dean Windham and Noble Homes, Inc. $7,871.88 as overpayment for rent and electric bills.  The court awarded appellant $15.50 on its counterclaim for underpayment of rent.  Appellant assigns five errors to the trial court:

{¶2}    "I. AS A MATTER OF LAW, THE TRIAL COURT FOUND THAT THE LANGUAGE USED IN THE LEASES ENTERED INTO BY THE PARTIES WAS CLEAR AND UNAMBIGUOUS WHEN IT PROPERLY APPLIED THE PAROL EVIDENCE RULE TO EXCLUDE TESTIMONY FROM THE LESSOR WHEN SEEKING TO EXPLAIN THE PARTIES INTENT OF THE UTILITIES SECTION OF THE LEASES, BUT THEN THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO ENFORCE THE CLEAR AND UNAMBIGUOUS LANGUAGE IN THE LEASES  THAT STATED THE LESSEE WOULD PAY THE AMOUNT OF ITS MONTHLY UTILITIES AS INVOICED FROM THE LESSOR.

{¶3}    "II. THE COURT ERRED AND ABUSED ITS DISCRETION BY RE-WRITING THE LEASES TO PROVIDE A MEANS OF CALCULATING HOW THE LESSOR WAS PERMITTED TO INVOICE LESSEE AND LIMITED THE LESSEE'S UTILITY LIABILITY TO ONLY ONE OF THE TWO METERS LOCATED AT THE SUBJECT PROPERTY'S BUILDING DESPITE THE LESSEE'S ADMISSION THAT IT KNEW AND AGREED WITH THE LESSOR THAT IT WAS LIABLE FOR ALL UTILITIES TO THE ENTIRE LEVEL THAT IT LEASED FROM THE LESSOR.

**{¶4}** "III. THE COURT ERRED AND ABUSED ITS DISCRETION IN CALCULATING DAMAGES AS THE AMOUNT OF THE JUDGMENT RENDERED FOR PLAINTIFF AND AGAINST DEFENDANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶5}** "IV. THE COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING JUDGMENT AGAINST LESSOR WHEN IN FACT THE EXHIBIT ON WHICH THE COURT RELIED WAS ADMITTEDLY FLAWED AND NOT IN RECONCILIATION WITH THE EVIDENCE AS PRESENTED TO THE COURT.

**{¶6}** "V. THE COURT ERRED AND ABUSED ITS DISCRETION IN NOT FINDING THAT LESSEE WAIVED ITS RIGHT TO RECOUP THE OVERPAYMENT OF RENT PURSUANT TO THE WRITTEN CORRESPONDENCE SPECIFICALLY STATING THAT IT DID NOT WANT A RETROACTIVE CORRECTION OF THE UTILITIES BEING CHARGED TO LESSEE."

**{¶7}** Appellees Dean Windham and Noble Homes, Inc. leased commercial property from 450 Investments, Inc. The property is located in Hartville, Stark County, Ohio. The court found Noble Homes is a general contractor and Windham is its president. 450 Investments is a corporation owned Dr. William L. Knop, D.C., and his wife Natalie. The parties entered into a lease on October 25, 2002, for a three-year term beginning December 1, 2002, for $542.00 per month. Sometime around April 2003, more space became available in the building and appellees expanded their area to include a showroom. The new monthly rent was established at $987.00 per month. Apparently the parties did not execute a new lease at that time.

{¶8} On March 25, 2005, the parties entered into a second written lease, from April 1, 2005 to March, 2010, providing the rent would be $1,016.61 per month. The court found because of the recession, appellees found they no longer needed or could afford the additional space. Accordingly, the parties entered into a third written lease on October 3, 2007. The lease was to run from October 3, 2007, to October 3, 2010. The rent for the premises dropped to $262.50 per month.

{¶9} The written leases provided that appellees were to pay for their electrical use. The court found it appears the appellant was unable to accurately ascertain how much electricity the appellees used after they expanded their space in 2003. The property had other tenants who were also being charged for their portions of the property's electric bill. The building had several electric meters, but the meters covered some of the areas that were used in common by more than one tenant. To add to the confusion, appellant did not always bill its tenants on a monthly basis, but would send invoices grouped into several months at a time.

{¶10} Eventually appellees became suspicious they were being overcharged for their electrical use, and began to question appellant both orally and in writing. In May 2008, appellees obtained copies of the actual Ohio Edison bills for the building. Appellee Windham testified by using those bills and the charges submitted by the appellant, he calculated appellees were overcharged $6,627.77.

{¶11} The trial court found appellant argued appellees had agreed to pay for 30 percent of the electrical costs for the common areas of the building in addition to the cost of the actual square footage they rented. Unfortunately, for a period of time, appellees were mistakenly charged for 70 percent of the electrical costs for the common

area, not 30 percent. Appellant conceded this mistaken charge made appellees' electrical charges appear high, but denied the overcharged amount came anywhere close to $6,627.77. The court found appellant asserted he and appellee Windham verbally agreed to the 30 percent assessment for the common areas, but appellee Windham denied any such agreement took place. None of the written leases mention any responsibility of the tenant to pay for electrical service for common areas of the building.

{¶12} In addition, Article XIX of each lease provides the lease sets forth the entire agreement between the parties and there are no covenants, promises, agreements, conditions or understandings either oral or written between them other than what is in the lease. The court found appellant drafted each of the leases.

{¶13} The court also found appellees underpaid their rent for thirty one months, paying $262.00 per month, which was $.50 less than the actual rental price of $262.50, from October 2007 until March 2010. Appellant's counterclaim asserted it was entitled to late fees for the $.50 monthly underpayment. The court declined to award late fees, finding appellant continually accepted late rent payments and waived its right to collect late fees. The court also found appellees had inadvertently paid their October 2004 rent twice, and after that, they had in effect been paying their rent a month in advance. The court found this would more than compensate for missing $15.50 for the months October 2007 to March 2010.

I & II.

{¶14} In appellant's first assignment of error, appellant argues the trial court was correct as a matter of law in finding the leases were clear and unambiguous, and thus,

excluded testimony from appellant regarding the parties' agreement on the utilities. However, appellant argues the court did not apply the clear and unambiguous language properly. In its second assignment of error, appellant argues the court abused its discretion by in effect re-writing the lease to provide a means of calculating how the appellant should calculate the utility usage.

{¶15} The question of whether a contract is ambiguous is a question of law. *Latina v. Woodpath Development Company* (1991), 57 Ohio St. 3d 212, 567 N.E. 2d 262. For this reason, this court reviews a trial court's determination de novo, without deference to the trial court. *Graham v. Drydock Coal Company*, 76 Ohio St. 3d 311. 1996-Ohio-393, 667 N.E.2d 949.

{¶16} If the terms of the contract are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipeline,* (1978) 53 Ohio St. 2d 241, 374 N.E.2d 146. The particular circumstances of the contract may give what would otherwise be plain language a special meaning. *Graham*, supra. However, if the language of a contract is ambiguous, then the court may hear parol evidence to resolve the ambiguity by ascertaining the intent of the parties. *Illinois Controls, Inc. v. Langham*, 70 Ohio St. 3d 512, 1994-Ohio-99, 639 N.E.2d 771.

{¶17} The first two leases provided appellees were to pay for their electrical usage by being invoiced every month for the amount used. The third lease stated appellees would pay their own monthly utilities once invoiced by appellant.

**{¶18}** Appellant argues it invoiced the appellees for the amount it determined to be appellees' responsibility for use. Appellant urges the leases do not provide that appellees are to be invoiced for what is actually being used from a specific meter, but rather, for the share of utilities, as the appellant has determined and invoiced.  Appellant also argues it is of no consequence whether appellees were billed 70 percent of the charges for the common areas rather than 30 percent.  Appellant suggests it could calculate appellees' utility charges to be whatever it decided, and the parties' contract required appellees to pay whatever was invoiced, regardless of how much of the electric bill was actually attributable to appellees' use. The court rejected this argument, finding the leases obliged appellees to pay only for what they used.

**{¶19}** The trial court refused to accept appellant's testimony the parties had orally agreed that appellees would pay a portion of the common area usage.  The court found none of the leases addressed that issue, and the parol evidence rule prohibited consideration of any additional, oral clauses or agreements.

**{¶20}** We find the plain language of the first two leases states that appellees were responsible for the amount used, and the third lease specifies appellees pay for their own monthly utilities.  This does not permit the interpretation that appellant was free to invoice appellees for whatever amount it wished, regardless of what appellees had used. We agree with the trial court the contracts are unambiguous, and appellant's assertion appellees were to pay for part of the common area electric usage was inadmissible as barred by the parol evidence rule. *Langham*, supra.

**{¶21}** The first and second assignments of error are overruled.

III.

**{¶22}** In its third assignment of error, appellant argues the trial court erred in calculating the damages, and its judgment is against the manifest weight of the evidence.

**{¶23}** A judgment will not be reversed as being against the manifest weight of the evidence if the record contains some competent and credible evidence going to all the essential elements of the case. *C.E. Morris Company v. Foley Construction Company* (1978), 24 Ohio St. 2d 279, 265 N.E.2d 554.

**{¶24}** The record contains a vast number of documents submitted by appellant and appellees. A review of the documents leads us to conclude the trial court's determination of damages is supported by competent and credible evidence in the record.

**{¶25}** The third assignment of error is overruled.

IV.

**{¶26}** In its fourth assignment of error, appellant argues in calculating damages, the trial court relied on an exhibit which appellee Windham admitted was flawed and not reconcilable with the evidence presented to the court. Specifically, appellant challenges appellees' Exhibit Number 6, a spreadsheet appellee Windham testified he created by using the actual Ohio Edison bills for the premises. However, during cross examination, appellee Windham admitted the numbers for December 2002 through May 2003 were not included in the exhibit.

**{¶27}** At the beginning of the hearing, the parties stipulated to the admissibility of the exhibit, although not necessarily to the accuracy of the contents. Appellant's counsel

specifically referred to the spreadsheet calculations, and asserted appellant agreed it was admissible and available for the court to weigh the credibility of the spreadsheets. Appellant also argues the analysis on the spreadsheet was based upon Ohio Edison invoices, which were not necessarily from appellees' unit.

**{¶28}** The trial court's judgment of July 29, 2010, does not specifically mention it relied on appellees' Exhibit 6, although the court cites to appellees' Exhibits 1, 2, 3, 4, 5, 7, and 11. We conclude appellant has not demonstrated he was prejudiced by any omission in the spreadsheet Exhibit 6, of which the court was aware pursuant to appellee Windham's testimony.

**{¶29}** The trial court noted appellant conceded that the appellees were charged for 70% of the cost of the common area, not for the 30% to which appellant claimed the parties had agreed. The trial court had a vast number of exhibits and calculations including actual bills, from which it found as a matter of fact the appellees, had proven by a preponderance of the evidence that over the course of the three leases, they had overpaid appellant $6,627.77 for electric bills and $1,259.61 for rent.

**{¶30}** We find the trial court's determination is supported by the evidence. Accordingly, the fourth assignment of error is overruled.

V.

**{¶31}** In its fifth assignment of error, appellant urges the trial court erred and abused its discretion in not finding the appellees waived their right to recoup the overpayment of rent pursuant to written correspondence that specifically stated: "I am not asking for a retroactive adjustment, only that the invoices in the future will reflect the actual benefit and consumption."

**{¶32}** Appellees argue the written correspondence refers to a period of time when appellees were still attempting to get copies of the actual billing from appellant or from Ohio Edison.  Appellees characterize the statement as an offer of compromise and not a waiver. A party may voluntarily relinquish a known right through words or by conduct. *State ex rel. Ford v. Cleveland Bd. of Education*, (1943), 141 Ohio St. 124, 47 N.E.2d 223. In *Finkbeiner v. Lutz* (1975), 44 Ohio App.2d 223, 337 N.E.2d 655, the lessees failed to pay their rent on time on numerous occasions and lessors accepted the late payments. The *Finkbeiner* court held that the failure of the lessors to timely object to the late payment of rent amounted to a waiver.

**{¶33}** We find the trial court did not err in declining to find the statement to be an express waiver of the overpayment on its utility bills. We also find the court was correct in finding appellant waived its right to late fees, and had the benefit of appellees' inadvertent double payment in October 2004. The trial court was the trier of fact, and was able to view the witnesses and to weigh the credibility of the evidence, and this court will not find, based on this record, that the court committed error. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273.

**{¶34}** The fifth assignment of error is overruled.

**{¶35}** For the foregoing reasons, the judgment of the Municipal Court of Canton, Stark County, Ohio, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE

WSG:clw 0223

[Cite as *Windham v. 450 Invests., Inc.*, 2011-Ohio-1034.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DEAN WINDHAM, ET AL | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| 450 INVESTMENTS, INC. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2010-CA-00215 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Canton, Stark County, Ohio, is affirmed. Costs to appellants.

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE