This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Holland Management, Inc., d.b.a. Holland Professional Group ("Holland Management") has appealed from a verdict of the Medina County Court of Common Pleas in favor of Plaintiff-Appellee Integrity Technical Services ("Integrity"). Integrity has cross-appealed from the trial court's directed verdict in favor of Holland Management on Integrity's claim for fraud. This Court affirms.
 I
{¶ 2} Integrity is an employee placement firm that specializes in recruiting engineers and engineering support staff for various businesses in need of such services. Holland Management is one of several companies owned by Mr. Jack Holland which operate under the business name "Holland Professional Group." In March 1999, Holland Professional Group and Integrity entered into a written agreement for the placement with Holland Professional Group of DBA, Inc., an architectural firm owned by Mr. Donald Berg.[1] The contract included the following terms:
 {¶ 3} "It is agreed that Mr. Donald Bergs' [sic] company, DBA, Inc. will perform work for Holland Professional Group[2] and charge accordingly. * * * If after ninety days Holland Professional Group is satisfied with the work performed by DBA, Inc. then Holland Professional Group agrees to hire Mr. Donald Berg as a direct employee. If Mr. Berg is hired then there is a fee of twenty-five (25%) percent of the first years [sic] accepted salary plus taxes of hired employee (Mr. Berg) to be paid to Integrity Technical Services, Inc. by Holland Professional Group." (Footnote added.)
{¶ 4} The contract also specified a "first year accepted salary" for Mr. Berg of $65,000, and adopted the following schedule for payment of Integrity's twenty-five percent fee:
 {¶ 5} "Payment schedule: 10% of the fee plus taxes to be paid with in [sic] 15 days of the date that DBA, Inc. starts working for Holland Professional Group (down payment). Then the first payment must be one third of the remaining fee plus sales tax to be paid within 15 days of date. The second payment must be one third of the remaining fee plus sales tax within fifteen days of the sixth month anniversary of the start. The third and final payment must be one third of the remaining fee and to be paid within 15 days of the one year anniversary of the date of hire."
{¶ 6} Pursuant to the agreement, Mr. Berg began working for Holland Management on March 10, 1999, and periodically invoiced Holland Management through his company. During that same month, Holland Management paid the ten percent down payment of $1,714.38 to Integrity. Mr. Berg was still working for Holland Management at the end of ninety days, which was June 8, 1998, and continued working for Holland Management for an additional fifty-two days. Holland Management terminated Mr. Berg on July 30, 1999, never hired him as a direct employee, and did not make any more payments on the placement fee to Integrity. Integrity did not return the $1,714.38 down payment on the fee.
{¶ 7} On December 30, 1999, Integrity filed a complaint against Holland Professional Group, alleging causes of action for breach of contract, promissory estoppel, unjust enrichment, and fraud. Holland Management filed an answer and counterclaim, alleging that Integrity breached the contract by failing to return the ten percent down payment on Mr. Berg's placement fee. The matter proceeded to trial before a jury. At the end of its presentation of evidence, Integrity dismissed its claims for promissory estoppel and unjust enrichment. The trial court then granted a directed verdict on Integrity's claim for fraud. At the close of Holland Management's evidence, the court granted a directed verdict in favor of Integrity on Holland Management's counterclaim. The case thereafter went to the jury on Integrity's claim for breach of contract, and the jury returned a verdict in favor of Integrity in the amount of $22,500.
{¶ 8} Holland Management filed motions for a new trial and judgment notwithstanding the verdict, which were denied by the trial court. Holland Management also filed a motion for remittitur which was granted by the trial court, and the court reduced the award of damages to $14,893.13 plus costs. Holland Management has timely appealed, asserting five assignments of error. Integrity has cross-appealed from the trial court's directed verdict in favor of Holland Management on Integrity's claim for fraud, asserting one assignment of error.
 II Holland Management's First Assignment of Error {¶ 9} "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF [HOLLAND MANAGEMENT] BY INCORRECTLY INSTRUCTING THE JURY THAT THEY MUST USE AN OBJECTIVE STANDARD IN DETERMINING WHETHER [HOLLAND MANAGEMENT] WAS SATISFIED WITH THE PERFORMANCE OF AN EMPLOYEE-ARCHITECT UNDER THE TERMS OF THE CONTRACT."
{¶ 10} In its first assignment of error, Holland Management has argued that the trial court erred in instructing the jury to apply an objective standard in determining whether Holland Management was satisfied with the services of Mr. Berg. Holland Management has contended that whether it was satisfied with Mr. Berg's work should be determined by a subjective standard.
{¶ 11} "Satisfaction clauses," or contract clauses which make one party's duty of performance conditional upon his satisfaction, have been divided by the courts into two categories. Hutton v. Monograms Plus,Inc. (1992), 78 Ohio App.3d 176, 181. Where an objective standard is applied to the determination of whether a party is "satisfied," the test is whether the performance would satisfy a reasonable person. Id. Where a subjective standard is applied, on the other hand, the test is whether the party is actually satisfied. Id. After surveying numerous cases involving the interpretation of satisfaction clauses, the court inHutton observed:
 {¶ 12} "The fact that a contract contains a general satisfaction clause, without more, does not mandate the application of a subjective standard. Absent express contract language, courts have looked to the nature of the contract as an indicator of which standard governs. In these cases, there is still no clear line of demarcation. Generally, the subjective standard applies to contracts involving matters of aesthetic taste, feasibility of operation, or management, regardless of financial impact. The objective standard of the reasonable person is generally applied where commercial or financial matters are involved." Hutton, 78 Ohio App.3d at 184.
{¶ 13} The court in Hutton then quoted and applied the position taken by the Restatement (2nd) of Contracts:
 {¶ 14} "When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance * * * and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied." Hutton, 78 Ohio App.3d at 185
(Emphasis sic.), quoting Restatement of the Law 2d, Contracts (1981), Section 28.
{¶ 15} In the instant case, as in Hutton, the record does not demonstrate that it would have been impracticable to determine whether a reasonable person in Holland Management's position would have been satisfied with the work performed by Mr. Berg. On the contrary, Mr. Holland frequently referred to objective professional standards in testifying about his claimed dissatisfaction with Mr. Berg's services. Specifically, Mr. Holland repeatedly stated that he was dissatisfied with Mr. Berg's failure to complete assignments within a reasonable amount of time. Mr. Holland also cited the fact that a state agency rejected a building permit on which Mr. Berg had worked and returned it with a multitude of negative comments, and that certain drawings submitted by Mr. Berg contained objectively incompatible floor and foundation plans. Moreover, Holland Management has failed to cite any relevant portions of the record to support its conclusory assertion that a subjective standard should apply to the determination of whether Holland Management was satisfied with Mr. Berg's performance. In the absence of express language to the contrary or evidence of impracticability of application, an objective standard informs the resolution of satisfaction clauses in contracts involving commercial or financial matters. Hutton,78 Ohio App.3d at 186. Accordingly, the trial court did not err in instructing the jury to apply an objective standard to the satisfaction clause in the contract. Holland Management's first assignment of error is without merit.
 Holland Management's Second Assignment of Error {¶ 16} "THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF [HOLLAND MANAGEMENT] BY IMPROPERLY ADMITTING PAROLE AND IRRELEVANT EVIDENCE."
{¶ 17} In its second assignment of error, Holland Management has argued that the trial court erred in allowing testimony that was inadmissible pursuant to the parol evidence rule and Evid.R. 402. Specifically, Holland Management has contended that the trial court erroneously permitted testimony regarding the parties' negotiations before they executed the contract, the customs and practice of the industry with respect to similar contracts, and witnesses' individual interpretations of various contract provisions.
{¶ 18} Generally, courts presume that the intent of the parties can be found in the written terms of their contract. Shifrin v. ForestCity Ent., Inc. (1992), 64 Ohio St.3d 635, 638. If a contract is unambiguous, the language of the contract controls and "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." Aultman Hosp. Assn. v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53. If, however, "a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties." Illinois Controls, Inc. v. Langham (1994),70 Ohio St.3d 512, 521. Therefore, "[p]arol evidence directed to the nature of a contractual relationship is admissible where the contract is ambiguous and the evidence is consistent with the written agreement[.]" Id. at paragraph two of the syllabus. Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. Butlerv. Joshi (May 9, 2001), 9th Dist. No. 00CA0058, at 4-5. "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law." Ohio Historical Society v.General Maintenance Engineering Co. (1989), 65 Ohio App.3d 139,146.
{¶ 19} The trial court concluded that the term "satisfied" was ambiguous with respect to 1) who would determine whether Holland Professional Group was satisfied with Mr. Berg's performance, and 2) whether the parties intended such satisfaction to be measured by an objective or subjective standard. The court also determined that the phrase "after ninety days" was ambiguous with regard to when, if ever, Holland Professional Group was obligated to hire Mr. Berg as a direct employee. The court then admitted parol evidence to resolve these ambiguities by ascertaining the intentions of the parties.
{¶ 20} We agree that the terms "satisfaction" and "after ninety days" as used in the agreement are ambiguous. As noted in our analysis of Holland Management's first assignment of error, "[a]bsent express contract language, courts have looked to the nature of the contract as an indicator of which standard [i.e., objective or subjective] governs." (Emphasis added.) Hutton, 78 Ohio App.3d at 184. The express language of the contract in the instant case does not indicate anything about whether an objective or subjective standard should apply for purposes of giving effect to the satisfaction clause. Indeed, reference to parol evidence is necessary even to establish that performance of the contract required Mr. Berg to provide architectural services. Also relevant to the resolution of these ambiguities was testimony regarding the inclusion or exclusion of similar provisions in other contracts negotiated by the parties and others in each party's respective industry. The parties' conformity with or departure from such industry custom in reaching their agreement was likewise relevant and admissible in trying to ascertain the parties' intentions in employing these ambiguous terms. Consequently, the trial court did not err by admitting parol evidence regarding industry custom and the intent of the parties prior to and during the formation of the contract. Holland Management's second assignment of error is not well taken.
 Holland Management's Third Assignment of Error {¶ 21} "THE TRIAL COURT ERRED BY DISMISSING [HOLLAND MANAGEMENT'S] COUNTERCLAIM."
{¶ 22} In its third assignment of error, Holland Management has argued that the trial court erred in granting a directed verdict in favor of Integrity on Holland Management's counterclaim. Holland Management has contended that reasonable minds could conclude from the evidence presented at trial that Holland Management was not satisfied with the performance of Mr. Berg, and therefore had no obligation to hire Mr. Berg as a direct employee. As a result, Holland Management has asserted, Integrity was not entitled to any fee, and reasonable minds could have concluded that Holland Management was entitled to recover its down payment of $1,714.38 from Integrity.
{¶ 23} Whether a trial court properly granted or denied a motion for directed verdict presents a question of law, which we review de novo. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257, appeal not allowed (2000), 90 Ohio St.3d 1472. Civ.R. 50(A)(4) provides:
 {¶ 24} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
{¶ 25} A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119-120. Where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Posin v.A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. However, when the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner (1990), 66 Ohio App.3d 693, 695.
{¶ 26} In its counterclaim, Holland Management alleged that any payment due Integrity under the contract was contingent upon Holland Management's satisfaction with Mr. Berg's performance after ninety days, and its subsequent direct employment of Mr. Berg. However, the payment schedule contained in the contract required Holland Management to pay Integrity $1,714.38 within fifteen days of the date that Mr. Berg began working for Holland Management. Nothing in the contract provided for a refund of this fee, or otherwise suggested that Integrity would be required to return the $1,714.38 to Holland Management if certain conditions were not met. Even viewing the evidence in a light most favorable to Holland Management, reasonable minds could only conclude that Integrity did not breach its obligations under the contract by refusing to return the $1,714.38. Holland Management's third assignment of error is without merit.
 Holland Management's Fourth Assignment of Error {¶ 27} "THE TRIAL COURT ERRED BY DENYING [HOLLAND MANAGEMENT'S] MOTION TO DISMISS BASED ON FAILURE TO OBTAIN SERVICE WITHIN ONE YEAR OF FILING THE COMPLAINT."
{¶ 28} In its fourth assignment of error, Holland Management has argued that the trial court erred in denying its motion to dismiss the complaint. Holland Management has contended that Integrity failed to obtain service on the amended complaint within one year of filing its original complaint, and the trial court should therefore have granted its motion to dismiss the amended complaint.
{¶ 29} Integrity filed its initial complaint on December 30, 1999, naming Holland Professional Group as the sole defendant. Integrity subsequently filed a motion to amend the complaint to substitute the actual names of the entities which do business as "Holland Professional Group," and the trial court granted Integrity's motion. On March 27, 2000, Integrity filed its amended complaint naming Holland Management as a defendant; however, Holland Management was not served with the amended complaint until January 9, 2001. Holland Management thereafter filed a motion to dismiss the amended complaint on the ground that Integrity failed to obtain service of the amended complaint within one year of filing, as required by Civ.R. 3(A).
{¶ 30} Whether the trial court properly denied Holland Management's motion to dismiss the complaint for failure to timely perfect service presents a question of law, which we review de novo. See, e.g., Western Reserve Mut. Cas. Co. v. GMC (Dec. 13, 2000), 9th Dist. No. 00CA0003, at 4.
{¶ 31} Civ.R. 3(A) provides that "[a] civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant, or upon an incorrectly named defendant whose name is later corrected pursuant to Civ.R. 15(C)[.]" Civ.R. 3(A) must be read in pari materia with Civ.R. 15(C). Cecil v.Cottrill (1993), 67 Ohio St.3d 367, 370. Civ.R. 15(C), in turn, provides:
 {¶ 32} "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."
{¶ 33} Holland Management has argued that Integrity was required to perfect service of its amended complaint within one year of the date that Integrity filed its original complaint, or by December 30, 2000. However, this Court has previously held that failure to obtain service on a defendant within one year of filing the complaint does not require that the complaint be dismissed. St. Thomas Hospital v. Beal (1981),2 Ohio App.3d 132. Rather, under such circumstances, the action is deemed to be "commenced" for purposes of applying a statute of limitations on the date of service and not on the date of filing. Unlike Kosa v.Pruchinsky (1992), 82 Ohio App.3d 649, cited by Holland Management in support of its position, there is no contention in this case that any applicable limitations period expired before Integrity obtained service of its amended complaint. Accordingly, the trial court did not err in denying Holland Management's motion to dismiss the complaint for failure to timely perfect service of the amended complaint. Holland Management's fourth assignment of error is not well taken.
 Holland Management's Fifth Assignment of Error {¶ 34} "THE TRIAL COURT ERRED TO [HOLLAND MANAGEMENT'S] PREJUDICE BY PERMITTING [INTEGRITY'S] REQUEST FOR JURY TRIAL WHERE DEMAND FOR SAME WAS NOT TIMELY MADE PURSUANT TO THE CIVIL RULES."
{¶ 35} In its fifth assignment of error, Holland Management has argued that the trial court erred by granting Integrity's request for a jury trial. Specifically, Holland Management has contended that Integrity did not timely file its jury demand pursuant to Civ.R. 38.
{¶ 36} Civ.R. 38(B) provides:
 {¶ 37} "Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue."
{¶ 38} Integrity obtained service of its initial complaint against Holland Professional Group on January 4, 2000. Holland Management served Integrity with its answer and counterclaim on January 24, 2000, and Integrity served Holland Management with its answer to the counterclaim on January 31, 2000. Integrity's amended complaint, filed on March 27, 2000, and served upon Holland Management on January 9, 2001, added Holland Management as a party defendant but did not otherwise substantively differ from Integrity's initial complaint. Integrity filed its jury demand on December 4, 2000, and Holland Management timely filed an objection in which it argued that Integrity's request was not timely made pursuant to Civ.R. 38. Without offering any reasons for its decision, the trial court scheduled the case for a jury trial by an order journalized on March 19, 2001.
{¶ 39} Holland Management has cited Burke v. Gammarino (1995),108 Ohio App.3d 138, for the proposition that "[a]n amended pleading that raises no new issues does not renew a party's right to demand jury trial within 14 days." However, Civ.R. 39(B) provides that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." This Court will not reverse a trial court's decision to order a jury trial pursuant to Civ.R. 39(B) unless the trial court abused its discretion. Kap v. B.F.Goodrich Co. (Aug. 5, 1998), 9th Dist. No. 18903, at 5, appeal not allowed (1998), 84 Ohio St.3d 1450. "Abuse of discretion" implies an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. Id., citing Davis v. Davis (1996), 115 Ohio App.3d 623,626.
{¶ 40} In its perfunctory argument under this assignment of error, Holland Management has failed to demonstrate that the trial court abused it discretion by ordering that Integrity's action proceed to trial before a jury. As evidence that it was prejudiced by the court's determination, Holland Management has pointed only to the jury award that was in excess of the maximum amount provided in the contract. However, any such prejudice visited upon Holland Management was properly cured by the trial court's remittitur of the damages award to $14,893.13. Holland Management's fifth assignment of error is without merit.
 Integrity's Assignment of Error on Cross-Appeal {¶ 41} "THE COURT ERRED WHEN IT GRANTED THE MOTION OF [HOLLAND MANAGEMENT] FOR A DIRECTED VERDICT ON THE CLAIM OF FRAUDUENT INDUCEMENT."
{¶ 42} In its sole assignment of error on cross-appeal, Integrity has argued that the trial court erred in granting Holland Management's motion for a directed verdict on Integrity's claim for fraud. Integrity has contended that sufficient evidence was adduced at trial from which reasonable minds could find for Integrity on the essential elements of its fraud claim.
{¶ 43} In order to prevail on a claim for common law fraud, a plaintiff must prove the following elements:
 {¶ 44} "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49.
{¶ 45} The Ohio Supreme Court has observed that:
 {¶ 46} "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract: Examples include a party to a release misrepresenting the economic value of the released claim, or one party employing coercion or duress to cause the other party to sign an agreement." ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 503.
{¶ 47} In the instant case, however, Integrity has not contended that Holland Management engaged in any conduct or made any representations "outside the contract" that constituted fraudulent inducement. Rather, Integrity has asserted that "[t]he essence of [its] claim of fraudulent inducement is that Holland Management `made a promise with the intent not to perform,'" quoting Galmish v. Cicchini (2000),90 Ohio St.3d 22, 30. According to Integrity, the false representation sufficient to articulate a claim for fraud was Holland Management's promise to pay the placement fee to Integrity, made while Holland Management harbored an intent to utilize the "after ninety day" satisfaction clause to assert dissatisfaction and avoid payment of the fee. In support of this assertion, Integrity has cited testimony that Jack Holland insisted on the ninety-day probationary period, as well as a payment schedule that delayed full payment of Integrity's placement fee for more than a year after Mr. Berg began working.
{¶ 48} We agree with the trial court that, even construing this evidence most strongly in favor of Integrity, reasonable minds could not conclude that Holland Management's promise to perform its obligations under the contract constituted fraudulent inducement. As discussed at length supra, the satisfaction clause and the "ninety day" provision of the agreement were reasonably susceptible to multiple interpretations. The evidence does not support the inference that in negotiating these provisions and including them in the contract, Holland Management falsely represented to Integrity that it would perform its contractual obligations with the intent to later avoid these obligations. Integrity's cross-assignment of error is not well taken.
 III
{¶ 49} Holland Management's assignments of error are overruled. Integrity's cross-assignment of error is also overruled. The judgment of the trial court is affirmed.
BATCHELDER, J. CONCURS
[1] At trial, Mr. Berg testified that his corporation was "a one man firm" called DB Architects, Inc. We will uniformly refer to the provider of architectural services under the contract — inconsistently designated as Mr. Berg and DBA, Inc. in the contract, and DB Architects, Inc. at trial — as "Mr. Berg."
[2] Although Holland Professional Group is a signatory to the contract, Holland Management stipulated that it is the entity responsible for performance of the contract, and that Holland Professional Group is simply a "dba" under which Holland Management and several related companies operate.