[Cite as *JPMorgan Chase Bank, NA v. Corral*, 2011-Ohio-3674.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NA. | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| TIMOTHY P. CORRAL, et al. | : | Case No. 10 CAE 09 0079 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of
                             Common Pleas, Case No 09 CV H 03 382

JUDGMENT:                    AFFIRMED, IN PART; REVERSED, IN
                             PART & REMANDED

DATE OF JUDGMENT ENTRY:      July 14, 2011

APPEARANCES:

For Plaintiff-Appellee                    For Defendants-Appellants

THOMAS R. MERRY                           GREGORY H. MELICK
JEANINE LOEHR BIELBY                      MATTHEW T. ANDERSON
110 Polaris Parkway, Suite 302            50 West Broad Street, Suite 1200
Westerville, OH 43082                     Columubs, OH 43215-3374

*Delaney, J.*

{¶1}    Defendants-Appellants Timothy P. Corral and Jayn L. Corral appeal the June 18, 2010 judgment, and related judgments of the Delaware County Court of Common Pleas in a case brought by Plaintiff-Appellee JPMorgan Chase Bank, NA, ("Chase Bank") to collect funds owing under a commercial guaranty.

{¶2}    Stephen R. Bethel and Mark A. Lankford were business partners and jointly owned a Direct Buy franchise in the Columbus, Ohio area known as Buy Direct, Inc.  In 2006, Bethel and Lankford obtained financing for Buy Direct, Inc. through Chase Bank.  Chase Bank loaned Bethel and Lankford $300,000 and to secure the debt, Bethel and Lankford cash-collateralized 50% of the loan balance by depositing $150,000 into separate deposit accounts with Chase Bank.  Chase Bank did not require Bethel and Lankford to sign personal guaranties for that loan.

{¶3}    In 2006, Bethel and Lankford approached Timothy Corral about becoming a shareholder in a second Direct Buy franchise.  Corral is a resident of Ohio, but he also lives in Arizona.  Bethel, Lankford, and Corral formed CMH West, Inc. where Corral agreed to become a 51% shareholder and Bethel and Lankford were 24½% shareholders.  Corral was named President, Bethel was Vice President, and Lankford was Secretary/Treasurer of the corporation. The goal of CMH West was to build a second Direct Buy franchise location.

{¶4}    Bethel contacted Chase Bank to obtain financing for CMH West.  Bethel and Lankford met with Lesley Burt, the Chase Bank Senior Relationship Manager of Business Banking, and Nancy Crooks, another Chase Bank employee, to discuss financing options.  Corral did not negotiate the terms of the financing with Chase Bank

but relied upon Bethel and Lankford. In negotiating the terms of the financing with Chase Bank, Bethel stated his business philosophy, and that of CMH West, was to avoid personal guaranties of any debt obligation.

{¶5}   According to Burt, CMH West was considered a start-up company, although Chase Bank already had a business relationship with Bethel and Lankford through Buy Direct. Chase Bank reviews financing for start-up companies differently than for an established company. In a start-up situation, the Bank requires sufficient collateralization and credit support from personal guarantors due to the uncertainty of the success of the business, lack of accounts receivables, real estate, or equipment to secure the loan.

{¶6}   Bethel originally requested a credit facility in the amount of $500,000.00. However, because of requirements from CMH West's landlord, the parties requested a $600,000.00 loan. Bethel testified that Burt told him during the negotiations that the loan would be structured similarly as the Buy Direct loan. Bethel interpreted this to mean the officers of CMH West would not personally guaranty the loan but would deposit one-half of the loan amount into personal savings accounts as cash collateralization for the loan. He believed the amount deposited into the personal bank accounts would be the limit of the officer's individual liability on the loan in case of default on the loan.

{¶7}   Burt could not recall if the parties specifically discussed personal guaranties during the negotiation process for the loan.  On February 29, 2008, Burt sent Corral, Bethel, and Lankford a Term Sheet memorializing the terms approved by Chase Bank for the $600,000.00 loan.  The Term Sheet listed Bethel, Lankford, and Corral as Guarantors with limited guaranties in the amount of $73,500.00, $73,500.00, and

$147,000.00[1], respectively.    The amount of the limited guaranties reflected the shareholders' ownership percentage in CMH West.  Collateral for the loan was a Chase Bank savings account in the amount of $300,000.00 deposited by the officers, plus a first lien on all business assets.   The officers initially were going to deposit the $300,000.00 in a savings account under the name of CMH West, but later decided that each officer would open a personal savings accounts so they did not intermingle their money.

{¶8}    Burt testified under the terms of the loan as stated on the Term Sheet, collateral for the loan was the deposit accounts totaling $300,000.00 and the first lien on all business accounts.   The Term Sheet did not state that the cash in the deposit accounts was collateral for the limited guaranties entered into by the officers.

{¶9}    On March 27, 2008, Bethel and Lankford met with Burt to sign the loan documents.   The loan documents consisted of a Promissory Note, three Commercial Guaranties, and three Assignments of Deposit Account.  The officers did not request to review the loan documents before signing them, nor did Bethel or Lankford have an attorney review the documents.   The documents were sent to Corral in Arizona.  Corral had his attorney review the documents before signing.  Corral's attorney told him that he believed that the documents stated that Corral had limited liability and Corral was only personally guarantying $153,000.00.

{¶10} As officers of CMH West, Bethel, Lankford, and Corral executed a Promissory Note with Chase Bank in the amount of $600,000.00.  The Promissory Note states in pertinent part:

---

[1] Burt stated the $147,000.00 was a typographical error. Corral's limited guaranty amount was actually $153,000.00.

{¶11} "* * *

{¶12} "COLLATERAL.  Borrower acknowledges this Note is secured by security interest in and lien upon all collateral described in any Related Document.

{¶13} "* * *

{¶14} "INDEBTEDNESS.  The word 'indebtedness' means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents, together with interest on such amounts as provided in this Note, and all obligations, debts and liabilities, plus interest thereon, of Borrower or any one or more of them to Lender, as well as all claims by Lender against Borrower or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of this Note, whether voluntary or otherwise, whether due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated and whether Borrower may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise and whether recovery upon such amounts may be or hereafter become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter become otherwise unenforceable; and further includes, without limitation, all principal, interest, and other amounts, costs and expenses payable under the Related Documents, whether executed by the Borrower or by any other person or entity, together with all renewals of, extensions of, modifications of, consolidations of and substitutions of Related Documents, together with interest thereon as provided in the Related Documents.

{¶15} "RELATED DOCUMENTS.  The words 'Related Documents' means all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now existing hereafter arising, executed in connection with the indebtedness.

{¶16} "LIABILITIES FOR OBLIGATIONS UNDER RELATED DOCUMENTS. Borrower also promises to pay to Lender all of the indebtedness.  Borrower acknowledges that some of the Related Documents, pursuant to which indebtedness may arise, may be executed only by persons or entities other than the Borrower."

{¶17}  In conjunction, the individuals each executed a Commercial Guaranty. Bethel and Lankford each entered into an individual Commercial Guaranty in the amount of $73,500.00.  Timothy P. Corral and Jayn L. Corral executed a Commercial Guaranty in the amount of $153,000.00.  The total of the limited guaranties equals $300,000.00.

{¶18}  The Commercial Guaranty states in pertinent part:

{¶19} "CONTINUING GUARANTY.  For good and valuable consideration, Timothy P. Corral and Jayn L. Corral ('Guarantor') absolutely and unconditionally guaranties and promises to pay, jointly and severally, to JPMorgan Chase Bank, NA ('Lender') in its order, * * *, the indebtedness (as that term is defined below) of CMH West, Inc. ('Borrower') to Lender on the terms and conditions set forth in this Guaranty. The obligation of Guarantor under this Guaranty are continuing.

{¶20} "MAXIMUM LIABILITY.  The maximum liability of Guarantor under this Guaranty shall not exceed at any one time the sum of the principal amount of

$153,000.00 plus all interest thereon, plus all of Lender's costs, expenses, and attorneys' fees incurred in connection with or relating to (A) the collection of the indebtedness, (B) the collection and sale of any collateral for the indebtedness or this Guaranty, or (C) the enforcement of this Guaranty.  Attorneys' fees include, without limitation, attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any fees and costs for trial and appeals.

{¶21}  "The above limitation on liability is not a restriction on the amount of the indebtedness of Borrower to Lender either in the aggregate or at any one time.  If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Grantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be the Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

{¶22}  "INDEBTEDNESS GUARANTEED.  The indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender,  * * *

{¶23}  "NATURE OF GUARANTY.  This Guaranty is a guaranty of payment and not of collection.  Therefore, the Lender can insist that the Guarantor pay immediately and the Lender is not required to attempt to collect first from the Borrower, any collateral, or any other person liable for the indebtedness.

{¶24} "GUARANTOR'S AUTHORIZATION TO LENDER. Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: * * * (C) to take and hold security for the payment of this Guaranty or the indebtedness; * * *

{¶25} "* * *

{¶26} "RIGHT OF SETOFF. Guarantor grants to Lender a security interest in, as well as a right of setoff against, and hereby assigns, conveys, delivers, pledges and transfers to Lender, as security for repayment of the indebtedness, all Guarantor's right, title and interest in and to all Guarantor's accounts (whether checking, savings, or some other account) with Lender * * *. Guarantor authorizes Lender, without prior notice to Guarantor and irrespective of (i) whether or not Lender has made any demand under this Guaranty or the Related Documents or (ii) whether such Indebtedness is contingent, mature or unmatured, to the extent permitted by law, to collect, charge and/or setoff all sums owing on the Indebtedness against any and all such accounts and other obligations, * * *.

{¶27} "Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. * * *

{¶28} "* * *

{¶29} "JURY WAIVER. THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY

AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER.  THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS.

{¶30} "DEFINITIONS.   * * * Related Documents.   The words 'Related Documents' mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness."

{¶31} Simultaneously, the individuals signed Assignments of Deposit Account where the Bethel, Lankford, and Corral opened deposit accounts with Chase Bank and the officers deposited a total of $300,000.00 in individual accounts.  Corral deposited $153,000.00 into his savings account.  The Assignment was signed by Corral individually, as Grantor, and also signed by the officers of CMH West, as Borrower.

{¶32} The Assignment of Deposit Account document states relevant to this appeal:

{¶33} "ASSIGNMENT.  For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit

accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

{¶34} "COLLATERAL DESCRIPTION. The word 'Collateral' means the following described deposit account ('Account'):

{¶35} "Savings Account Number XXXXXXXXXX [sic] with JPMorgan Chase Bank, NA

{¶36} "Cumulative Remedies. All of Lender's rights and remedies, whether evidence by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

{¶37} "Indebtedness. The word 'indebtedness' means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible for under this Agreement or under any of the Related Documents. In addition, without limitation, the term 'indebtedness' includes all amounts identified in the Cross-Collateralization and Future Advances paragraphs as contained in one or more Related Documents.

{¶38} "Related Documents. The word 'Related Documents' mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages,

and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness."

{¶39} After Bethel, Lankford, and Corral opened the deposit accounts at Chase Bank, Burt put a hold on the accounts.

{¶40} In late 2009, Bethel contacted Burt at Chase Bank to attempt to renegotiate the terms of the loan. CMH West was experiencing financial difficulties in the start-up of the business and could not fulfill the terms of the loan. Bethel asked that Chase Bank modify the loan to allow no interest for six months. Burt responded that in order to convert the CMH West loan to six months with interest only, the limited guaranties of the Bethel, Lankford, and Corral would be replaced with unlimited personal guaranties. Burt testified at trial Chase Bank was requiring unlimited guarantees from each guarantor so the bank could proceed to collect from each guarantor the total amount owing to the bank as opposed to only receiving a certain amount from each guarantor. During the negotiations, Bethel told Burt that Chase Bank should consider the modifications because if the loan went into default, the shareholders would only be out $300,000.00. Burt did not respond to Bethel's understanding.

{¶41} CMH West defaulted on the loan. Pursuant to the Promissory Note terms, Chase Bank accelerated the loan. (T. 79). On March 13, 2009, Chase Bank sent a letter to Corral informing him that pursuant to the Assignment of Deposit Agreement, Chase Bank applied the funds in the amount of $153,202.01 to the outstanding loan balance of CMH West. The letter further stated that the funds were pledged as collateral and were applied to reduce a portion of the outstanding debt.

{¶42}   On March 23, 2009, Chase Bank filed a Complaint on Guaranty with the Delaware County Court of Common Pleas naming Timothy P. Corral and Jayn L. Corral as Defendants.  Chase Bank sought to collect payment on the Commercial Guaranty in the amount of $153,000.00.  Chase Bank also requested interest, attorneys' fees, and costs.  Appellants answered the Complaint and made a jury demand.

{¶43} Chase Bank also filed a complaint against Bethel and Lankford in the Licking County Court of Common Pleas under Case No. 2009 CV 00566.  Chase Bank entitled its pleading as "Complaint on Guaranties" and sought cognovits judgments against Bethel and Lankford.  The trial court entered confessed cognovits judgments as to Bethel and Lankford on the same day.

{¶44}  Bethel and Lankford filed a Motion for Relief from Judgment on June 17, 2009.  On August 5, 2009, the trial court denied the Motion for Relief from Judgment.  Bethel and Lankford appealed the judgment to this Court in *JPMorgan Chase, NA v. Stephen R. Bethel, et al.*, Licking App. No. 09 CA 0110.

{¶45}  In the present case, Chase Bank filed a Motion for Summary Judgment on its Complaint in August 2009.  Chase Bank argued there was no genuine issue of material fact that Appellants were liable on the Commercial Guaranty.  Appellants filed a Cross-Motion for Summary Judgment.  The trial court denied both Motions for Summary Judgment on January 6, 2010, finding that there was a genuine issue of material fact as to whether the deposit account was meant to secure the Commercial Guaranty and satisfy the Commercial Guaranty in case of CMH West's default on the loan.

{¶46}   Chase Bank filed a Motion to Strike Appellant's Jury Demand pursuant to Civ.R. 39(A)(2).  The trial court granted the motion to strike the jury demand.

{¶47} The matter proceeded to a bench trial before the trial court on May 20, 2010 and May 21, 2010.

{¶48} On June 18, 2010, the trial court issued its Findings of Fact and Conclusions of Law, finding in favor of Chase Bank. The trial court found there was no ambiguity in the loan documents. The Commercial Guaranty was separate from the Assignment of Deposit Account so that the funds from the deposit account did not secure the Commercial Guaranty. The Assignment of Deposit Account served as collateral for the CMH West loan, not the Commercial Guaranty. The trial court found Appellants were liable under the Commercial Guaranty for $153,000.00, plus $21,158.55 in attorneys' fees, interest, and costs.

{¶49} On June 23, 2010, this Court issued its opinion in *JPMorgan Chase v. Bethel*, Licking App. No. 09 CA 0110, 2010-Ohio-2987. In our decision, we reversed and remanded the decision of the Licking County Court of Common Pleas to deny Bethel and Lankford's Motion for Relief from Judgment. In so doing, we held:

{¶50} "Upon review of the agreements herein, the limited personal guarantees provide a maximum personal liability of $73,500 for each appellant. The appellants each deposited and assigned $73,500 of their personal monies, the exact amount of their maximum liability under their personal guarantees. The Assignment(s) of Deposit Accounts provide the savings deposit accounts secure the 'indebtedness' of each appellant, which is further defined as the indebtedness evidenced by the Note or Related Documents. In turn, the term 'Related Documents' is defined to include the guarantees. Therefore, we find the language of the documents conflicting and ambiguous.

{¶51} "It is well established in Ohio conflicting provisions in a contract cannot be interpreted as a matter of law, and must be given to the fact finder, who must then rely on parol evidence. *See Fairmont Creamery Co. v. Ewing* (1932), 43 Ohio App.191." Id. at ¶17-18.

{¶52} Appellants filed a Motion for New Judgment or, in the alternative, a New Trial on June 30, 2010. Appellants argued the trial court's June 18, 2010 judgment was contrary to this Court's decision in *Bethel*, supra. The trial court denied the motion for new trial on September 23, 2010.

{¶53} It is under these facts and circumstances Appellants now appeal the decisions of the Delaware County Court of Common Pleas.

## ASSIGNMENTS OF ERROR

{¶54} Appellants appeal the trial court's decision to strike their jury demand, the June 18, 2010 judgment finding in favor of Chase Bank, the award of attorneys' fees, and the denial of Appellants' motion for new judgment or new trial.

{¶55} Appellant raises nine Assignments of Error:

{¶56} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THE LOAN DOCUMENTS TO BE UNAMBIGUOUS. (JUDGMENT ENTRY GRANTING JUDGMENT FOR PLAINTIFF, APP. EXHIBIT A, AT 4).

{¶57} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT CONSIDERING PAROL EVIDENCE TO ASCERTAIN THE PARTIES' INTENT. (JUDGMENT ENTRY GRANTING JUDGMENT FOR PLAINTIFF, APP. EX. A, AT 3-4).

{¶58} "III. THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION IN SUSTAINING CHASE'S OBJECTIONS THAT LIMITED THE PAROL TESTIMONY OFFERED BY THE CORRALS.  (TRIAL TRANSCRIPT AT 149-50, 164-5, 168).

{¶59} "IV. THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN FAVOR OF CHASE.  (JUDGMENT ENTRY GRANTING JUDGMENT FOR PLAINTIFF, APP. EX. A).

{¶60} "V. THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING ATTORNEY FEES TO CHASE, AS ATTORNEY FEE PROVISIONS IN DEBT INSTRUMENTS ARE UNENFORCEABLE.  (JUDGMENT ENTRY GRANTING JUDGMENT FOR PLAINTIFF, APP. EX. A, AT 5).

{¶61} "VI. THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING ATTORNEY FEES TO CHASE, AS CHASE'S ONE-SIDED BOILERPLATE ATTORNEY FEES PROVISION IS UNENFORCEABLE.  (JUDGMENT ENTRY GRANTING JUDGMENT FOR PLAINTIFF, APP. EX. A, AT 5).

{¶62} "VII. THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES TO CHASE, AS SUCH AWARD IS NOT SUPPORTED BY ANY COMPETENT OR CREDIBLE EVIDENCE.  (JUDGMENT ENTRY GRANTING JUDGMENT FOR PLAINTIFF, APP. EX. A, AT 5).

{¶63} "VIII. THE TRIAL COURT ERRED AS A MATTER OF LAW IN STRIKING THE CORRALS' JURY DEMAND.  (JUDGMENT ENTRY GRANTING PLAINTIFF'S MOTION TO STRIKE JURY DEMAND, APP. EX. B).

{¶64} "IX. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING THE CORRALS' MOTION FOR A NEW JUDGMENT, OR IN THE ALTERNATIVE, A

NEW TRIAL. (ORDER AND ENTRY DENYING DEFENDANTS" MOTION FOR A NEW JUDGMENT, OR IN THE ALTERNATIVE, A NEW TRIAL, APP. EX. C)."

**I., II., III., IV., and IX.**

{¶65} The core issue in this case, simply stated, is whether Chase Bank must apply the Assignment of Deposit Account to satisfy the Commercial Guaranty. After reviewing the loan documents and the evidence presented at the trial, we find there is competent, credible evidence the Assignment of Deposit Account served as collateral for the CMH West loan and Chase Bank was within its contractual rights to apply the Assignment of Deposit Account funds to the outstanding Note balance, as opposed to the Commercial Guaranty. In reaching our decision, we will discuss Appellants' first, second, third, fourth and ninth Assignments of Error together.

{¶66} Appellants argue in their first Assignment of Error that the trial court erred in finding the loan documents in this case were unambiguous. The trial court stated in its June 18, 2010 judgment entry:

{¶67} "The assignment of account (Ex. 3) provides that the account serves as collateral for CMH West Inc.'s indebtedness to the Plaintiff, not as collateral for the Corrals' guaranty. The assignment of deposit account states 'Grantor (Corral) assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness…' Under the paragraph headed 'Cross-Collateralization', it states that 'this agreement secures all obligations, debts and liabilities, plus interest thereon of Borrower (CMH West) to Lender (JPMorgan Chase)…'

{¶68} "The note (Ex. 1) describes collateral as being that set forth in any Related documents. The definition of Related documents included guaranties and all other documents executed in connection with the indebtedness, which would include the assignment of account. Further, the guaranty (Ex. 2) grants the Lender authority to '…take and hold security for the payment of this guaranty or Indebtedness…' This provision does not limit the options available to the Lender.

{¶69} "No provision in either the account assignment or the guaranty explicitly states that the application of the account funds satisfies the guaranty. No reference is made to the guaranty in the assignment document and no reference is made to the assignment of deposit account in the guaranty document. No ambiguity exists in the language in the loan documents. The investor-borrowers took ahold of the limited guaranty language and assumed that their personal liability was limited to that amount which was in the assignment of account. The guaranty itself under the heading 'maximum liability', says the maximum liability of Guarantor '<u>under this guaranty</u>' (emphasis added) shall not exceed the $153,000.00 amount plus interest, costs, expenses and attorney fees."

{¶70} Appellants state the trial court's finding is contrary to our decision in *Bethel*, supra. In *Bethel*, supra, we stated:

{¶71} "Upon review of the agreements herein, the limited personal guarantees provide a maximum personal liability of $73,500 for each appellant. The appellants each deposited and assigned $73,500 of their personal monies, the exact amount of their maximum liability under their personal guarantees. The Assignment(s) of Deposit Accounts provide the savings deposit accounts secure the 'indebtedness' of each

appellant, which is further defined as the indebtedness evidenced by the Note or Related Documents.  In turn, the term 'Related Documents' is defined to include the guarantees.    Therefore, we find the language of the documents conflicting and ambiguous." Id. at ¶17.

{¶72}  Appellants argue that because we found the CMH West loan documents to be ambiguous, and the Delaware trial court reviewed the CMH West loan documents and found them to be unambiguous, the Delaware trial court decision therefore should be reversed as a matter of law because it is contrary to our decision in *Bethel*.  We disagree.

{¶73}  In *Bethel*, supra, we held:

{¶74}  "It is well established in Ohio conflicting provisions in a contract cannot be interpreted as a matter of law, and must be given to the fact finder, who must then rely on parol evidence.  *See Fairmont Creamery Co. v. Ewing* (1932), 43 Ohio App.191." Id. at ¶18.

{¶75}  A review of the procedural history in the present case shows the Delaware trial court also found the CMH West loan documents to be ambiguous and ordered that a trial be held to determine the meaning of the documents.  In August 2009, the parties both filed Motions for Summary Judgment, arguing under their interpretation of the loan documents, each party was entitled to judgment as a matter of law.  The trial court denied the motions and held:

{¶76}  "The pleadings and affidavits filed in conjunction with these motions do not resolve the parties' dispute.  There is conflicting testimony as to whether the deposit account was meant to secure the Defendants' commercial guaranty and satisfy the

guaranty in the event of default.  Therefore, a question of fact remains before this Court and the Court cannot find as a matter of law either party is entitled to summary judgment as a matter of law."  January 6, 2010, Judgment Entry denying Summary Judgment.

{¶77}  At the summary judgment stage of the proceedings, the trial court found the loan documents and the parties' interpretations of the documents necessitated a trial for further evidence.  In *Bethel*, we found the CMH loan documents were ambiguous and compelled a trial.  The trial court's decision to deny summary judgment because there were genuine issues of material fact as to the terms of the CMH West loan and the matter should proceed to trial adheres to our determination in *Bethel* that the loan documents should be heard before a fact finder to consider parol evidence. Appellants' first Assignment of Error is overruled.

{¶78}  We next examine Appellants' second and third Assignments of Error regarding the trial court's consideration of parol evidence.  In *Bethel*, we found the CMH West loan documents were ambiguous and the matter should be heard before a fact finder to consider parol evidence.

{¶79}  The parol evidence rule provides that "'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"  *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting 11 Williston on Contracts (4th Ed.1999) 569-570, Section 33:4.  "The principal purpose of the parol evidence rule is to protect the integrity of written contracts." Id. "By prohibiting evidence of parol agreements, the rule seeks to

ensure the stability, predictability, and enforceability of finalized written instruments." Id. *Williams v. Spitzer Autoworld Canton, L.L.C.* 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410,

{¶80} "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. * * * Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. * * * When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin v. Forest Enterprises, Inc.,* 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 1992-Ohio-28. If the language of a contract is ambiguous, then the court may hear parol evidence to resolve the ambiguity by ascertaining the intent of the parties. *Illinois Controls, Inc. v. Langham,* 70 Ohio St.3d 512, 1994–Ohio–99, 639 N.E.2d 771.

{¶81} We first address Appellants' third Assignment of Error that the trial court abused its discretion in sustaining Chase Bank's objections that limited the parol testimony offered by the Corrals. We disagree.

{¶82} On Bethel's direct testimony, Bethel testified about the search for the location for the franchise and the process for entering a lease agreement that did not include a personal guaranty. The first objection raised as error by Appellants is as follows:

{¶83} "Q. Okay. And I take it from your testimony, you and Mark undertook that search for a period of time, and ultimately found a location, which is near the airport; is that right?

{¶84} "A. Correct.

{¶85} "MR. MERRY: Objection, Your Honor. It is now 1:33 and we have been doing this for about a half hour and we have not yet got to the note that is at issue in this case, the guaranty that is at issue in this case. We haven't even gotten to the Buy Direct loan, the Buy Direct loan, which was like a precursor to the loan that is in issue in this case. I would like perhaps, get more to the meat of –

{¶86} "THE COURT: Are you objecting on the relevance ground?

{¶87} "MR. MERRY: I am, Your Honor.

{¶88} "THE COURT: Sustained." (T. 149-150).

{¶89} The trial court allowed Appellants to question Bethel further into the background of the Buy Direct franchise lease agreement. (T. 150-151).

{¶90} The second objection reads as follows:

{¶91} "Q. And I take it, you, Tim and Mark were actually going to be building out a store in an existing shell; is that correct?

{¶92} "MR. MERRY: Objection, Your Honor. I continue to raise the same relevancy objection. I think we would stipulate that they looked around, they found a store; they didn't sign a personal guaranty on the lease. I would like to get to the meat of the issue here or we'll be here until next week.

{¶93}  "THE COURT: I thought maybe that's why you weren't objecting to all the leading questions because you wanted to get things moving along."  (T. 164-165).  The trial court sustained the objection.

{¶94}  The third objections states:

{¶95}  "Q. And you also rejected, over a period of months, their requirement that you personally guaranty the leasehold?

{¶96}  "A. Right

{¶97}  "MR. MERRY: Objection, Your Honor, relevance and leading.

{¶98}  "THE COURT: Sustained."  (T. 168).

{¶99}  We find the trial court did not abuse its discretion in sustaining Chase Bank's objections.  The remainder of the trial transcript shows the trial court's ruling on the relevancy of the evidence did not constrain Appellants from providing ample parol evidence regarding Bethel's negotiations into the lease agreement to demonstrate his rejection of a personal guaranty.  This was repeatedly demonstrated at trial and no prejudice resulted to Appellants as a result of the trial's rulings.

{¶100} Appellants' third Assignment of Error is overruled.

{¶101} We consider Appellants' second and fourth Assignments of Error together because they address the trial court's ultimate judgment in this case.

{¶102} Appellants second Assignment of Error states that the trial court did not consider the parol evidence.  Appellants do not argue in their second Assignment of Error that the trial court did not *allow* parol evidence; rather, Appellants contend that the trial court did not *consider* the weight of the parol evidence of the parties' intent in making its judgment that the loan documents were unambiguous.

{¶103}Bethel, Lankford, and Corral's business philosophy was to avoid a personal guaranty for debt obligations. Bethel testified at length about the negotiations for the Buy Direct loan and the negotiations with the landlord for the CMH West property to show he was against personal guaranties. Appellants' argument is that in entering into the loan agreement with Chase Bank, Appellants did not intend to personally guaranty the loan but rather limit their liability to $153,000.00, the amount in the Assignment of Deposit Account. Appellants argue that in finding the CMH West loan documents were unambiguous and the Assignment of Deposit Account did not satisfy the Commercial Guaranty, the trial court disregarded the parol evidence that showed the parties' intent that the Assignment of Deposit Account satisfied the Commercial Guaranty.

{¶104}The procedural history and the trial transcript shows that the trial court considered parol evidence in making its judgment:

{¶105}"THE COURT: * * * If it goes toward negotiations of a contract, then, of course, we had that discussion about the parole [sic] evidence rule earlier and I already indicated – I think I indicated, I would permit that in. * * *." (T. 50).

{¶106}"MR. MERRY: Objection, Your Honor, I would like to lodge a continuing objection. I know we covered this on the basis of parole [sic] evidence. I would fully expect that the court would deny the objection, but I believe that we, for the record, need to get it made. And the basis would be that Chase believes that the language of the written contracts are clear, and the court cannot and need not look any further in order to determine, interpret the document. I think this entire line of questioning is not only irrelevant but barred.

{¶107} "MR. MELICK: Your Honor has already addressed that both in its summary judgment denial and in our pre-trial of two weeks ago, where Your Honor said that this evidence could come in and that the [court] would weigh it.

{¶108} "THE COURT: Right.  We'll overrule."  (T. 155).

{¶109} We next address Appellants' fourth Assignment of Error to determine whether, under the trial court's consideration of the parol evidence presented in this case, the trial court erred in granting judgment in favor of Chase Bank.  We find it did not.

{¶110}  An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case.  *C.E. Morris Co. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.  "A reviewing court does not decide whether it would have come to the same conclusion as the trial court.  Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions."  *Hooten Equipment Co. v. Trimat, Inc.,* 4th Dist. No. 03CA16, 2004–Ohio1128, ¶ 7.  We are to defer to the findings of the trier of fact because in a bench trial the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony.  *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273.  We may not substitute our judgment for that of the trier of fact.  *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748, 621.

{¶111} In this case, the trial court ultimately did not agree with Appellants' understanding of the loan documents. The trial court appropriately considered the language of the CMH West loan, the Commercial Guaranty, the Assignment of Deposit Account, and the Term Sheets, as well as the parties' negotiations, intent and understanding. The trial court, after considering all the evidence, found Appellants liable under the Commercial Guaranty and reached a decision that is supported by competent, credible evidence. The record contains the testimony of Burt, who stated the Assignment of Deposit Accounts were not sufficient collateral to support the $600,000 CMH West loan without the Commercial Guaranty. Moreover, the language of the Commercial Guaranty in its plain, ordinary sense, guaranteed payment from Appellants. Chase Bank could insist upon this payment without resorting to any collateral, such as the Assignment of Deposit Accounts, in the first instance.

{¶112} Upon consideration of the entire record, we find the trial court did not err in finding Appellants liable under the terms of the Commercial Guaranty. Appellants' fourth Assignment of Error is overruled.

{¶113} In the ninth Assignment of Error, Appellants state the trial court erred as a matter of law in denying Appellants' Motion for New Judgment, or in the alternative, New Trial. The sole basis of the motion was the intervening decision of this Court in the Licking County case involving a Civ.R. 60(B) motion filed by Bethel and Lankford.

{¶114} However, in light of our disposition of Appellants' first through fourth Assignments of Error, we find Appellants' Ninth Assignment of Error not well-taken.

**V., VI., VII.**

{¶115} Appellants' fifth, sixth, and seventh Assignments of Error raise the issue of the trial court's award of attorneys' fees to Chase Bank.

{¶116} The terms of the Commercial Guaranty stated that Appellants agreed to pay the Chase Bank's attorneys' fees, expenses, and costs incurred in the enforcement and collection of the Commercial Guaranty. At trial, Burt testified as to Chase Bank's attorneys' fees found in Chase Bank's Exhibit 25, the legal invoices with the time descriptions. Chase Bank presented the legal invoices with the time descriptions so the trial court could assess the reasonableness of the attorneys' fees. Burt was asked to give the trial court a total of the attorneys' fees from an adding machine tape that allegedly calculated the legal invoices in Exhibit 25. Appellants objected, stating that Chase Bank failed to lay a foundation for the adding machine tape, Chase Bank failed to present evidence that the attorneys' fees were reasonable, and the attorneys' fees provision was unenforceable as a matter of law.

{¶117} The trial court overruled the objection by allowing a recess so Burt could calculate the numbers from the adding machine tape and invoices. Burt then testified that the total amount of legal fees from the adding machine tape was $21,158.55.

{¶118} In the trial court's June 18, 2010 judgment, the trial court awarded Chase Bank attorneys' fees in the amount of $21,158.55, without analysis.

{¶119} Appellants argue in their fifth and sixth Assignments of Error that the trial court erred in granting attorneys' fees to Chase Bank because the attorneys' fee language in the Commercial Guaranty was unenforceable as a matter of law. Appellants contend (1) attorneys' fees provisions in debt instruments are unenforceable

and (2) the Commercial Guaranty was a boilerplate document generated by Chase Bank so that the attorneys' fees provision was not freely negotiated and thus should be found unenforceable as a matter of law.

{¶120} The CMH West loan agreement was a commercial loan transaction, resulting in a Commercial Guaranty in the amount of $153,000.00. Chase Bank prepared the loan documents. Appellants consulted an attorney before signing the documents.

{¶121} We first find that Ohio law permits attorneys' fees provisions in commercial debt instruments. "R.C. 1301.21 authorizes enforcement of provisions for reasonable attorney fees in contracts that do not evidence primarily personal, family, or household purpose indebtedness and are in excess of $100,000." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶39. R.C. 1301.21 states:

{¶122} "(A) As used in this section:

{¶123} "(1) 'Contract of indebtedness' means a note, bond, mortgage, conditional sale contract, retail installment contract, lease, security agreement, or other written evidence of indebtedness, other than indebtedness incurred for purposes that are primarily personal, family, or household.

{¶124} "(2) 'Commitment to pay attorneys' fees' means an obligation to pay attorneys' fees that arises in connection with the enforcement of a contract of indebtedness.

{¶125} "(3) 'Maturity of the debt' includes maturity upon default or otherwise.

{¶126} "(B) If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after

maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section.

{¶127} "(C) A commitment to pay attorneys' fees is enforceable under this section only if the total amount owed on the contract of indebtedness at the time the contract was entered into exceeds one hundred thousand dollars.

{¶128} "(D) A commitment to pay attorneys' fees is enforceable only to the extent that it obligates payment of a reasonable amount."

{¶129} Appellants next argue that because Appellants did not negotiate for the attorneys' fees provision, it is unenforceable. Appellants cite the Sixth District Court of Appeals case of *Executive Business Ctrs., Inc. v. Transpacific Mfg.*, Ltd., 6th Dist. No. L-08-1060, 2009-Ohio-516, for the proposition that an attorneys' fees provision in a commercial lease was unenforceable when there was no evidence that the parties specifically negotiated the attorneys' fees provision. In *Executive Business Ctrs.*, the parties entered into a commercial lease agreement that contained an attorneys' fees provision where in case of default, the tenant would be liable for attorneys' fees and expenses incurred by the landlord in enforcing the lease.

{¶130} In making the decision to find the provision unenforceable, the Sixth District was required to differentiate between two cases where the court had found an attorneys' provision unenforceable and enforceable. The Sixth District found in *K & A Cleaning, Inc. v. Materni*, 6th Dist. No. L-05-1293, 2006-Ohio-1989 that an attorneys'

fees provision in a lease agreement was unenforceable as a one-sided penalty and encouraged litigation. Id. at ¶11.

{¶131} Alternatively, the Sixth District found in *Norfolk Southern v. Toledo Edison*, 6th Dist. No. L-06-1268, 2008-Ohio-1572, that because the appellant and appellee "were of equal bargaining positions, were of similar sophistication and had the opportunity to obtain counsel to review the provision and negotiate its terms," the contract terms permitting the award of attorney fees were enforceable. Id. at ¶ 65.

{¶132} The Fifth District has had the opportunity to review the issue of an attorneys' fee provision in a pre-printed contract. In *Broadway v. Arthur* (Aug. 30, 2000), 5th Dist. No. 99CA-G-12-063, we held that an attorneys' fee provision contained in a pre-printed contract was not void as a matter of public policy as long as "the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." Id. citing *Nottingdale Home Owners' Association, Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702. We further found the logic to be applicable to commercial and non-commercial transactions. In *GMS Management Company, Inc. v. K & K Industries, Inc.* (April 29, 1991), 5th Dist. 8279, unreported, 1991 WL 70154, we wrote that "although *Nottingdale* was specifically limited to a non-commercial transaction, we believe that it would be illogical to hold unenforceable a contractual provision for the payment of attorney fees in a commercial transaction where there is no evidence of unequal bargaining positions and no evidence of compulsion or duress." Id. at 4.

{¶133} In the present case, Bethel testified as to the negotiation process he engaged in with Burt and Chase Bank. Bethel, Lankford, and Corral were sophisticated

businessmen operating a lucrative business franchise. Bethel and Lankford chose not to review the loan documents before signing them; but Appellants did have their attorney review the loan documents before signing them.

{¶134} Accordingly, we find that the attorneys' fees provision contained within the Commercial Guaranty is enforceable as a matter of law. Appellants' fifth and sixth Assignments of Error are overruled.

{¶135} Appellants argue in their seventh Assignments of Error that the trial court erred in awarding attorneys' fees because the award was not supported by competent, credible evidence. On the record before us, we agree. There was no competent credible evidence to support the trial court's decision that the attorneys' fees were reasonable other than the testimony of Burt, the Chase Bank Senior Relationship Manager of Business Banking, and her calculation of an adding machine tape. We reverse the decision of the trial court to award attorneys' fees and remand the case for further proceedings under this issue.

{¶136} In *Landmark Disposal, Inc. v. Byler Flea Market*, 5th Dist. Nos. 2005CA00291, 2005CA00294, 2006-Ohio-3935, this Court reviewed the trial court's award of attorneys' fees in a breach of contract case where the contract contained an attorneys' fees provision for the breaching party. We held the appropriate manner of determining attorneys' fees was as such:

{¶137} "The starting point in determining the amount of fees to award under the statute is the computation of the lodestar figure. *Blum v. Stenson* (1984), 465 U.S. 886, 888,104 S.Ct. 1541, 1543-1544, 79 L.Ed.2d 891, 895-896; *Hensley v. Eckerhart* (1983), 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. The lodestar is the number of hours

expended multiplied by a reasonable hourly rate. *City of Burlington v. Dague* (1992), 505 U.S. 557, 559-561, 112 S.Ct. 2638, 2640, 120 L.Ed.2d 449, 454-456; Blum, 465 U.S. at 888; Hensley, 461 U.S. at 433. If the court deviates from the lodestar, it must provide a clear explanation. *Hensley*, 461 U.S. at 437.

{¶138} "Once the trial court calculates the lodestar figure, the court may modify that calculation by application of the factors listed in DR 2-106(B). *Bittner v. Tri-County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 145, 569 N.E.2d 464. These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation. Id.

{¶139} Appellants' seventh Assignment of Error is sustained.

**VIII.**

{¶140} Appellants argue in their eighth Assignment of Error that the trial court erred as a matter of law in striking Appellants' jury demand. We disagree.

{¶141} The Commercial Guaranty contained a jury waiver that stated as follows:

{¶142} "JURY WAIVER. THE UNDERSIGNED AND LENDER (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN

RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS DOCUMENT, THE RELATED DOCUMENTS, OR ANY RELATIONSHIP BETWEEN OR AMONG THE UNDERSIGNED AND LENDER.  THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS DOCUMENT AND THE RELATED DOCUMENTS."

{¶143} Appellants answer contained a jury demand.  Chase Bank moved to strike the jury demand based on the contractual jury waiver.  The trial court granted the motion to strike based on the terms of the contractual jury waiver and Civ.R. 39(A).

{¶144} Appellants argue that pre-litigation contractual jury waiver provisions in a Commercial Guaranty violate Appellants' right to a jury trial as secured by the Ohio Constitution.  Civ.R. 38 states:

{¶145} "(A) The right to trial by jury shall be preserved to the parties inviolate.

{¶146} "(B) Demand

{¶147} "Any party may demand a trial by jury on any issue triable of right by a jury * * *."

{¶148} Appellants state that a demand for a jury trial may only be waived through Civ.R. 39(A).  Civ.R. 39(A) provides:

{¶149} "The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right

of trial by jury of some or all of those issues does not exist.  The failure of a party or his attorney of record either to answer or appear for trial constitutes a waiver of trial by jury by such party and authorizes submission of all issues to the court."

{¶150} The First, Sixth, and Eighth District Courts of Appeals have upheld a contractual jury waiver provision pursuant to Civ.R. 39(A), finding that a contractual jury waiver provision demonstrates that "a right of trial by jury of some or all of those issues does not exist."  See *Northpointe Properties v. Charter One Bank*, 8th Dist. No. 94020, 2011-Ohio-2512; *MidAm Bank v. Dolin*, 6th Dist. No. L-04-1033, 2005-Ohio-3353; and *Truck World, Inc. v. Fifth Third Bank* (Sept. 29, 1995), 1st Dist. Nos. C-940029 and C-940399.

{¶151} Accordingly, we find the trial court did not err in granting Chase Bank's motion to strike the jury demand and hereby overrule Appellants' eighth Assignment of Error.

{¶152}For the above stated reasons, the judgments of the Delaware County Court of Common Pleas are affirmed, in part, and reversed, in part and this matter is remanded for further proceedings.


By: Delaney, J.

Wise,  P.J.  and

Edwards, J. concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. JOHN W. WISE


_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NA. | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TIMOTHYP. CORRAL, ET AL | : | |
| | : | |
| Defendants-Appellants | : | Case No. 10 CAE 09 0079 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgments of the Delaware County Court of Common Pleas are affirmed, in part, and reversed, in part, and this cause is remanded for further proceedings.

Costs of this appeal assessed 80% to Appellants and 20% to Appellee.


_____
HON. PATRICIA A. DELANEY


_____
HON. JOHN W. WISE


_____
HON. JULIE A. EDWARDS